(54 South. 292.)

No. 18,009.

POIRIER et al. v. BURTON-SWARTZ CYPRESS CO.

(Jan. 30, 1911.)

*(Syllabus by Editorial Staff.)*

1. DEEDS (§ 207*)—EXISTENCE—EVIDENCE.

A defendant, in a petitory action brought by heirs of the deceased patentee from the government, relied on entries in the index book of conveyances in the recorder's office, showing a sale by the patentee to a third person under whom defendant claimed, but the record of the act evidencing the sale was not found. A map, invariably correct, disclosed that the land in the section was in the joint names of the patentee and the third person. Subsequently the land in question was sold in the succession of the third person, during the life of the patentee, who lived on the adjoining plantation. Defendant claimed as a remote grantee under such sale. *Held* that, under Civ. Code, art. 2288, providing that presumptions not established by law are left to the judgment and discretion of the judge, who ought to admit none but weighty, precise, and consistent presumptions, and only in cases where the law admits testimonial proof, unless the act be attacked on account of fraud, there was a failure to show a divestiture of the patentee's title to the land in controversy.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 614–624; Dec. Dig. § 207.*]

2. EXECUTORS AND ADMINISTRATORS (§ 68*)—INVENTORY OF PROPERTY—DESCRIPTION—SUFFICIENCY.

Where one owned 293.11 acres in a section, a description in the inventory and sale in the succession of the owner as "a portion of land situated in section * * * containing 123.01 acres" is insufficient to identify any particular 123.01 acres sold.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 317; Dec. Dig. § 68.*]

3. LIMITATION OF ACTIONS (§ 195*)—KNOWLEDGE OF CAUSE OF ACTION — BURDEN OF PROOF—PRESCRIPTION.

Under Act No. 33, of 1902, providing that prescription where timber has been cut runs from the date when knowledge of damage is received by the owner, one suing for the cutting and removal of timber has, to avoid the plea of prescription of one year interposed by defendant, the burden of showing the date when knowledge of the trespass was brought home to him, and where he had had knowledge of the act for more than a year, but made no protest because he did not know where the boundary line was, his action was barred.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 711–716; Dec. Dig. § 195.*]

4. PRINCIPAL AND AGENT (§ 177*)—NOTICE TO AGENT—EFFECT AS TO PRINCIPAL.

Where three of the four owners of land left the whole matter in the hands of the latter, so that he was their representative in looking after their interests in the premises, they were bound by his knowledge of a trespass on the land by cutting and removing timber therefrom, so that the trespasser could, in an action by them, rely on Act No. 33, of 1902, providing that prescription runs where timber has been cut from the date knowledge of the damage is received by the owner.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670–679; Dec. Dig. § 177.*]

Appeal from Twenty-Seventh Judicial District Court, Parish of St. James; Paul Leche, Judge.

Action by Mrs. Josephine Poirier and others against the Burton-Swartz Cypress Company. From a judgment for plaintiffs, defendant appeals. Affirmed in part. Reversed in part.

Pugh & Himel and Walter Lemann, for appellant. W. B. Le Bourgeois (R. McCulloh, of counsel), for appellees.

PROVOSTY, J. This is a petitory action, coupled with a demand in damages for the value of timber alleged to have been wrongfully cut on the land in controversy and removed therefrom. The land is swamp, and has not heretofore been in anybody's corporeal possession. It is described as N. ½, or lots 1, 2, and 3, of section 49, township 12 S., range 15 E., Southeast district of Louisiana, west of river, St. James parish, containing 293.11 acres. It will conduce, perhaps, to clearness in what comes later if we explain here that in St. James parish, as elsewhere in Louisiana along rivers and bayous, the lands along the Mississippi river were surveyed, subdivided, and sold by the government by sections having a few acres frontage on the river, and going back 40 and 80 acres; and that in St. James parish, the front part of these lands being high and dry and the back part low and swampy, the habitations are all on the river front; and that the lands back of the 80-acre line were surveyed and subdivided in the usual way into square sections and quarter sections. The land in controversy lies just back of the 80-acre line, adjoining the front sections. Plaintiffs claim title by inheritance from their father, Michel Poirier, who had acquired by patent from the government.

Defendant's claim of title begins with two entries in the index book of conveyances of the records of the recorder's office of the parish of St. James, one, under the letter P, reading, "Michel Poirier to Pierre Richard, sale of land, page 717," and the other, under the letter R, reading, "Pierre Richard by Michel Poirier, sale of land, p. 717." The act evidencing the sale thus indexed is not now to be found, if it ever existed. At that time, in the parish of St. James, the acts of sale brought to the recorder's office for registration were not transcribed into a bound book, but were kept and bound together in book form, and their pages numbered consecutively like those of a book; and the said act of sale from Michel Poirier, the father of the plaintiffs, to Pierre Richard, constitute, if the index speaks true, page 717 of "Book F2, December 5, 1839, to January 1, 1841." But that book, unfortunately, contains only 714 pages. In that connection, the present incumbent of the recorder's office testifies that the record books were rebound, and that the pages after page 714 may have been lost, or otherwise left out, in the process of rebinding.

Confirmatory of the contention of defendant that the land thus apparently sold by Michel Poirier, father of plaintiffs, to Pierre Richard was a part of the section 49, now in controversy, is the fact that the said section 49 figures to the joint names of Michel Poirier and Pierre Richard on Powell's map, a map made in 1841, and recognized in all the parishes which it embraces as being remarkably—one might almost say, invariably—correct. Further, and well nigh absolute, con-

firmation is found in the fact that 142.91 acres of this section 49 was sold in the succession of Pierre Richard; and, apparently, as forming part of the plantation of Pierre Richard which it adjoined; and that this was done in 1849, during the life of Michel Poirier, who must have known of it, since he lived upon the adjoining plantation, and the two plantations were small, and, indeed, St. James parish itself is so small as practically to constitute one neighborhood. The 142.91 acres here in question are described in the deed evidencing this succession sale as follows:

"A certain lot of ground which is separated by five acres of land belonging to Mr. P. M. La Pice or Mr. Edmond Forstall, beyond the end of the 80 arpents of the principal plantation above described measuring 142.91 acres en superficie, bounded in front by the above mentioned portion of ground belonging to Messrs. La Pice and Forstall, above the lands of Michel Poirier below by P. M. La Pice, and in the rear by land supposedly belonging to the United States government."

The affidavit of a surveyor, annexed to a motion for new trial, shows that, from the documents in the transcript in conjunction with some other documents that were ruled out by the court, this description locates and identifies completely the 142.91 acres thus purported to be sold. The purchaser at this succession sale of Pierre Richard was Drauzin Gaudet. In 1867, after the death of Drauzin Gaudet, the same property which he had thus bought at the succession sale of Pierre Richard—that is to say, the Pierre Richard plantation proper, or the section fronting a few acres on the river and going back 80 acres, together with the swamp lands back of it, including the 142.91 acres in question—was seized by the sheriff and sold to J. A. Gaudet; the 142.91 acres being vaguely described in the sheriff's deed, as follows:

"A portion of land in section 49, T. 12 S., R. 15 E., containing 142.91 acres."

The deed evidencing the latter sale does not refer to any preceding deed for showing the derivation of the title to the property or for further identification of the property.

Under this same vague description, the land was successively sold by J. A. Gaudet to P. Maspero, in 1867; by P. Maspero to People's Bank, in 1886; by People's Bank to J. Ganier and Eug. Clan, in 1886; and by the latter to O. Roussel, in 1889. Each of these four deeds refers back to the deed immediately preceding it for the derivation of the title and the further identification of the property.

O. Roussel sold to W. L. Burton the following:

"The south half of section 49, T. 12 S., R. 15 E., and also a tract of land in the northwest quarter of same section, containing 152.91."

Burton, who was the president of the defendant company, sold to the defendant company the entire section 49.

Were we allowed to decide from inference in a matter involving title to real estate, we should without the slightest hesitation say that Michel Poirier sold to Pierre Richard the 142.91 acres constituting the northwest quarter of section 49; but article 2288, Civ. Code, is positive and unequivocal:

"Presumptions, not established by law, are left to the judgment and discretion of the judge, who ought to admit none but weighty, precise and consistent presumptions, and only in cases where the law admits testimonial proof, unless the act be attacked on account of fraud or deceit."

No question of fraud or deceit arises in this case, and it is not a case where the contents of a lost document are sought to be proved. It is a case where the existence of a document is sought to be established by inference, or by "presumption," as the Code, in the language of the civil law, calls it. True, the presumption in this case is "weighty, precise, and consistent"; but the case is not one in which testimonial proof could be admitted. Non constat but that, after all, the indexed act of sale did not call

for some other land than this 142.91 acres in section 49.

The divestiture of Michel Poirier's title to this 142.91 acres is therefore not proved, and the case stands precisely as if the index entries and the several acts heretofore herein referred to were not in existence; in other words, as if the records of the parish of St. James were a perfect blank in so far as tending to show any divestiture of Michel Poirier's title to this 142.91. Dealing with the case from that standpoint, we have to adopt the conclusion that, as to the other or remaining 150.16 acres of the land in dispute, defendant has in like manner failed to show that the title of Michel Poirier was ever divested.

For so showing, defendant relies upon the inventory and the sale in the succession of Michel Poirier, showing that the following property was inventoried and sold:

"A portion of land situated in Sec. 49, T. 12, R. 15 E., containing 123.01 acres."

Considering that Michel Poirier owned 293.11 acres in said section, this description is plainly too vague to locate and identify any particular 123.01 acres. Besides, if we deducted from the 293.11 acres called for by the patent to Michel Poirier the 142.91 said to have been sold to Pierre Richard, there would be left 150.20 acres, and not 123.01 acres.

Though having little or no bearing on the case, we will mention, in passing, that there was included in the inventory of the succession of Michel Poirier a tract of land containing 150.16 acres described as situated in section 48, Tp. 12, R. 16 E. And we find that one year after the inventory had been made the widow of Michel Poirier, and administratrix of his succession, filed a petition in which she alleged that, although diligent search had been made, it had been found impossible to locate this 150.16 acres; that the officer who had inventoried this lot had taken the description from a patent issued by the government to Michel Poirier. It is quite probable that this missing 150.16 acres was the 150.20 left to Michel Poirier after the sale of the 142.91 to Pierre Richard, and that the officer simply made a mistake in giving the section and range. Such mistake in figures in describing lands according to the United States surveys is so frequent as to constitute more nearly the rule than the exception.

Coming to the demand for the value of the timber taken by the defendant and to the prescription of one year pleaded against it, we find that the timber was cut and removed several years before the institution of this suit; and that, for avoiding the plea of prescription of one year pleaded by defendant as applicable to actions ex delicto, plaintiffs invoke Act 33 of 1902, according to which that prescription begins to run, in a case like the present, only "from the date knowledge of such damage is received by the owners of the land."

The language of this act is not different in its import from that of article 613, Code Prac., relating to the action in nullity of judgment for fraud, which is that the suit must be brought "within the year the fraud has been discovered." Construing that article, this court said, in the case of Succession of Dauphin, 112 La. 103–143, 36 South. 287, quoting from the decision of the Supreme Court of the United States in the case of Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807, that:

"The burden of proof is on the plaintiff in nullity to show at what date the discovery of the fraud was made, and such information as ought to put the plaintiff on inquiry is sufficient to start the running of the prescription; and in this class of cases the plaintiff is held to stringent rules of evidence."

And the court quoted further from that decision the following:

"Whatever is notice enough to excite attention and put the party on his guard and call

for inquiry is notice of everything to which such inquiry might have led. When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it."

And in a case involving the application of this same Act 33 of 1902, now invoked by plaintiffs, this court cited this case of Succession of Dauphin with approval, and held that the burden was on plaintiff "to prove the date that knowledge of the alleged trespass was brought home to him." Citizens' Bank v. Jeansonne, 120 La. 393, 45 South. 367.

Under the operation of these principles, the plea of prescription must be sustained. The plaintiffs are Michel Poirier and his three sisters. The sisters lived in New Orleans; Michel Poirier lived in St. James parish, where the land is situated. He alone testified. His sisters did not. His testimony shows that he knew approximately the location of the tract of swamp land ·owned by him and his sisters; that seven or eight years ago he offered to sell it to the president of the defendant company; that when the defendant began cutting timber in that neighborhood, he thought the time had come for him to look this land matter up, and that, accordingly, he consulted a lawyer, who advised him to employ a local lawyer; that when the adjoining land was surveyed four or five years before the institution of the suit, he went hunting there, but would have nothing to do with the survey, because the parties who were having it made wanted him to share the expense of it; that, as a blacksmith and all-around man in the employment of the defendant company, he went several times on this land while the timber was being cut, and repaired there the skidder with which the work was being done; that he made no protest or claim at that time, because, as he says, he did not then know where the line was, and could not swear then that, the cutting was on this land; that, while he did not know then the exact location of the land, he knew "about the direction that it was from the front."

It is plain that, under the foregoing circumstances, Michel Poirier was put upon inquiry, and that, if he remained in ignorance of the fact that it was on his land that the timber was being cut, it was through his own fault in failing to take the proper steps to inform himself. And we think his sisters are bound by the knowledge which he had, because, from his testimony, it is evident that they left the whole matter in his hands; that he was their representative for looking after their interest in the premises.

The judgment appealed from is affirmed, in so far as it decrees the plaintiffs to be the owners of the land in dispute; and it is set aside, in so far as it sustains the plaintiffs' demand for damages. And the said demand for damages is now rejected; the plaintiffs to pay the costs of appeal, and the defendant those of the lower court.