(110 So. 489)

No. 25442.

## TIRCUIT et al. v. BURTON-SWARTZ CYPRESS CO.

(May 3, 1926. On Rehearing, Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Judgment ⊜707—Estoppel cannot be based on judicial admissions in another suit against other parties (Rev. Civ. Code, art. 2291).**

Although matter of law successfully urged in former suit between same parties does "estop" them in future litigation, under Rev. Civ. Code, art. 2291, estoppel cannot be based on judicial admission by defendants to answer by interveners, predecessors of plaintiffs in title, in another suit against another party.

2. **Deeds ⊜38(4)—Sales.**

Description of land as certain quantity in larger tract, described by section, township, and range, is inadequate.

3. **Deeds ⊜38(1)—Sales.**

Description enabling court to determine with certainty, with aid of admissible extrinsic evidence, property intended to be conveyed, is adequate.

4. **Deeds ⊜111—Sales.**

Although grantees took title calling for north half of certain section, they acquired only amount of land which their grantor had therein.

5. **Deeds ⊜118—Sales.**

Evidence *held* insufficient to establish by elimination true description of land described in deed as 123 acres in specified section.

6. **Trespass ⊜46(2).**

In action for cutting timber, evidence failing to establish identity of plaintiff's land, described as 123 acres in certain section, *held* to support judgment for defendants, also owners of land in such section.

### On Rehearing.

7. **Trespass ⊜19(1).**

To recover for trespass on land, plaintiffs must show that they were owners of land.

8. **Adverse possession ⊜71(2)—Prescription cannot be relied on to give title where deed is void because of defective description of grantees, or successors were never in physical possession.**

Where neither purchaser in mortgage foreclosure sale nor his successors in title were in physical possession, prescription period cannot be relied on to give title to those claiming under them, where title of mortgagor was defective for inadequate description.

Thompson, J., dissenting.

Appeal from Twenty-Seventh Judicial District Court, Parish of Saint James; Sam A. Le Blanc, Judge.

Action by Denis Tircuit and others against the Burton-Swartz Cypress Company to recover the value of timber cut on certain land. From a judgment rejecting their demand, plaintiffs appeal. Affirmed.

Guion & Lambremont, of New Orleans, for appellants.

Walter Lemann, of Donaldsonville, and H. L. Himel, of Convent, for appellee.

ST. PAUL, J. This case is the aftermath of the case of Josephine Poirier et al. v. Burton-Swartz · Cypress Co. (this same defendant), reported in 127 La. 936, 54 So. 292.

We annex below a composite sketch of the various surveys and essays at surveys which have been made of the lands about which this controversy hinges. The sketch is not drawn to scale, but all measurements are given, and on the whole it is sufficiently accurate to afford a just idea of the lay of the land.

## I.

In 1848 Michel Poirier was the owner of a sugar plantation in St. James parish on the west bank of the Mississippi river, measuring about 3½ arpents front on said river by 80 arpents in depth.

On January 5, 1843, he purchased from the government "lots *one,* *two,* and *three* of section 49 in township 12 south of range 15 east, * * * containing 293.60 acres," which three lots formed together the whole of the north half of said section 49.

Poirier died in May, 1864, and in his succession there were duly inventoried and sold (1) the above-described sugar plantation, measuring about 3½ arpents front on the river by 80 arpents in depth; (2) a portion of land in the rear thereof, in section 61 of township 12 south, range 16 east, containing 15.30 acres, "or 19⅓ arpents"; and (3) "a portion of ground in section 49 of township 12 south, range 16 east, containing 123 acres and a fraction."

With the above-mentioned properties Nos. (1) and (2), we are not concerned herein further than merely to mention that the prop-

TOWNSHIP 12 SOUTH, RANGE 15 EAST.
SOUTHEASTERN DISTRICT OF LOUISIANA, WEST OF THE MISSISSIPPI RIVER,
(SECTION 49; 626.80 ACRES)

erty described as No. (2) lies between the 80-arpent line and the line dividing section 61 of township 12 south, range 16 east, from section 49 of township 12 south, range 15 east, as will be seen from the sketch.

## II.

At the succession sale Mrs. Estelle Pedesclaux, wife of Philippe Landry, became the purchaser of all three parcels of land, by the description given in the inventory, except that the parcel mentioned as No. (3) was described as "containing 123.01 acres," instead of "123 acres and a fraction." So that by that sale this parcel of land passed out of the ownership of the succession of Michel Poirier (if it did thereby pass out thereof), and into the ownership of the said Mrs. Philippe Landry, as *a portion of land situated in section 49 of township 12 south, range 15 east, containing 123.01 acres,* without other description.

## III.

On March 22, 1871, Mrs. Landry mortgaged the above-said three parcels of land to Dupre, Reine & Co. for $22,500 payable November 1st. When she failed to pay the property was duly seized, and was thereupon sold by the sheriff on February 10, 1872.

Under the Constitution of 1868, art. 132, then in force, and under R. S. 1870, § 3451, since repealed by Act No. 32 of 1877, all lands sold by decree of court had to be subdivided into lots of not less than 10 nor more than 50 acres. This was done in this case. The plantation and the 15-acre parcel in section 61 were divided into 12 lots, and the 123 acres in section 49 were divided into three lots of 41 acres each, numbered as lots 13, 14, 15.

But the *plan* by which that subdivision was made has been lost or destroyed, and cannot now be found, although every effort has been made at one time or another to find it, or to reconstruct it as to these three lots.

## IV.

At that sale Celestin Oliver became the purchaser of said lots 13, 14, and 15, which were not otherwise described, except by reference to said plan. On January 30, 1874, Celestin Oliver sold said three lots to Jean Baptiste Philippe, Victorin Morris, Theoville Pierre, and 24 others; and on December 6th, 1876, Theoville Pierre sold his undivided one twenty-seventh interest therein to Denis Tircuit.

## V.

This is an action by said J. B. Philippe, Victorin Morris, and Denis Tircuit to recover of defendants three twenty-sevenths of the value of certain timber cut by defendants off said lands. And the only serious defense set up by the defendant is that the alleged sale by the succession of Michel Poirier conveyed no title to any particular lands, or land whatever.

## VI.

[1] But before considering that defense we must first consider the plaintiff's plea of *estoppel* against even the urging thereof by this defendant, with reference to which the trial judge correctly says:

"This plea arises out of the suit of Poirier et al. against this same defendant [supra]. * * * In that suit, before this [the district] court, there was filed an *intervention* [afterwards discontinued] by one Edgar Landry and others, who claimed to be the owners of the same property therein claimed by the plaintiffs; and in answering that intervention the defendant, after specially denying that the interveners were the owners of said property, averred that *that* property had been sold by the sheriff on February 10, 1872, to Celestin Oliver, and on January 30, 1874, by Celestin Oliver to Joseph C. Oliver and others [including these plaintiffs]. That being the same title under which the present plaintiffs claim, they urge that the present defendant, who is the same as in the Poirier suit, is *estopped* by its said judicial admission from now disputing that title.

"I take it that the plea is based on article 2291, R. C. C., which defines a *judicial confession* and reads as follows: 'The judicial confession is the declaration which the party, or his

special attorney in fact, makes in a judicial proceeding. It amounts to full proof against him who has made it.' * * *

"A lengthy review and very interesting discussion of all the authorities is to be found in the case of Farley et al. v. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, L. R. A. 1915A, 200, Ann. Cas. 1915C, 717; the decision in which, in order to settle the jurisprudence [which before, had been somewhat conflicting], upheld the doctrine that *allegations of law, unsuccessfully made in a former suit, do not estop*; and again, that judicial allegations operate as estoppels only when they have been acted on by the party invoking them as such. And with reference to article 2291, R. C. C., that decision has this to say, 'This article, by the way, has reference only to the judicial confession made in the suit itself, either in the pleadings, or in the note of evidence, for the purpose of dispensing from taking evidence upon the fact admitted; it has no reference to confessions, or admissions, made in other suits. The latter can be classed only as extrajudicial confessions, or admissions, which are evidence but not conclusive presumptions, or estoppels.' Page 542.

"To the same effect, see Commercial-Germania Trust & Savings Bank v. White, 145 La. 54, 63, 81 So. 753, 756, where the court says, 'An allegation thus made in another suit and as against another party, * * * cannot operate as a judicial estoppel.'

"Under the plea now being considered, the declaration relied on was made in another suit and against another party, and according to the jurisprudence cannot be successfully invoked as a plea of estoppel by these plaintiffs in this suit. The plea is therefore overruled."

In Farley v. Frost-Johnson Lumber Co., supra, it is said that article 2291, R. C. C., is an exact translation of article 1356, Code Napoléon, which has been given the same interpretation by the Court of Cassation.

And the expression of Mr. Justice Provosty in that case, that "allegations of law *unsuccessfully* made in a former suit do not estop," is only the complement of the counter proposition that matter of law successfully urged in a former suit between the same parties *does* estop, i. e., does constitute the rule of law between them in any future litigation; or. as the Prætor has expressed it, "Quod quisque juris in alterum statuerit, ut ipse eodem jure utatur" (rubric to title 2, book 2 of the digest); i. e., Let every one be required to observe the law which he has applied, or caused to be applied, to another. For, as Ulpian says (L. 1, eodem), "Nam quis aspernabitur idem jus sibi dici, quod ipse aliis dixit, vel dici efficit?" i. e., Who would spurn for himself the same law which he has laid down, or caused to be laid down for another? But unless such rule of law be actually established—i. e., *successfully* urged, not merely pleaded—against the other (i. e., "quod juris quisque statuerit in alterum"), the rule, has no application.

And it may be added that the defendant *also* urged the same defense against *the plaintiffs* in that suit, the heirs of Michel Poirier, but therein they were *unsuccessful*.

## VII.

The patent issued to Michel Poirier in 1843 recites that lots 1, 2, and 3 of section 49 aforesaid contain 293.60 acres of land "according to the official plat of the survey of said lands," but an equally *official* plat and certificate of survey made some time just prior to June 10, 1851, and certified as correct by the Recorder of the General Land Office at Washington, shows that said lots 1, 2, and 3 (composing the whole of the *north half* of said section) actually contain 302.16 acres, as follows: Lot No, 1, being the east half of the northeast quarter, contains 81.16 acres; lot No. 2, being the west half of said northeast quarter, also, contains 81.16 acres (making 162.32 acres for the whole of the northeast quarter of said section); and lot No. 3, consisting of the whole of the northwest quarter of said section, contains 139.84; making therefore as above said 302.16 acres for the whole of the north half of said section (to wit, 162.32 plus 139.84); and the latter plat, being later in date, is probably the more correct.

## VIII.

[2] In the Poirier Case, supra, this court said of the description by which the land was sold in the succession of Michel Poirier, to wit, "A portion of land situated in sec. 49, t. 12 S., r. 15 E., containing 123.01 acres," that this description "is plainly too vague to locate and identify any particular 123.01 acres," and hence conveyed no title to any land whatever.

This is in accord with the general jurisprudence on the subject, "It is insufficient to describe it [the land] by quantity alone, or by a quantity to be taken out of a larger tract without indicating out of what part it is to be taken or giving to one party the right to select such tract, or by giving only the starting point and one side." 39 Cyc. 1223, 1224 (verb., Vendor and Purchaser); citing inter alia Short v. Methodist Episcopal Church, 11 La. Ann. 174, which is directly in point. And again:

"A mere designation of the quantity of land to be conveyed is not a description of the land. A designation of the land as a certain quantity out of a larger tract (as of so many acres out of a specified tract), is insufficient, where the boundaries of the part are not stated or the part has not been carved out [even to entitle the promisee to specific performance]." 36 Cyc. 592 (verbo, Specific Performance).

## IX.

[3] On the other hand, it suffices if the description be "such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary." 36 Cyc. 591 (verbo, Specific Performance).

Now we have here, as a beginning of proof, the fact that Michel Poirier died *insolvent* (as shown by the final account); that *all* the property belonging to his succession was sold to pay debts; that the administratrix, his widow, who lived on the plantation, found (to be inventoried) only 123 acres "and a fraction" of land still belonging to said succession in said section 49; that the correctness of said inventory was not challenged by the creditors of said succession, who were mostly relatives; nor by the relatives who composed the family meeting called on behalf of the minor children of Poirier; that the public officers charged with the duty of making a *correct* inventory of the succession property,[1] and who had full access to the public records of a parish, which (as said in the Poirier Case) is itself "so small as practically to constitute one neighborhood," found only said 123 acres "and a fraction" still belonging to the deceased in said section 49.

All of which clearly appears from the record of the succession of said Michel Poirier; and leads to the inevitable conclusion that the 123 acres of land sold in said succession constituted the last remaining portion of said section 49 which the deceased had not himself disposed of during his lifetime.

The question here presented is therefore two-fold: (1) Can the said 123 acres of land be identified of themselves without reference to the sales made by Michel Poirier during his lifetime, i. e., by resorting to other available evidence, such as contemporaneous (or near contemporaneous) descriptions thereof, or boundaries established? And, if not, then: (2) Can their identity be established by a process of elimination, i. e., by platting off sales made by Poirier during his lifetime, and thus reducing the remaining acreage of said section 49 to (approximately) 123 acres?

## X.

[4] As to the *first* inquiry, unfortunately for plaintiffs it fails of result. We say *unfortunately*, because it clearly appears from what we have heretofore said, that Mrs. Philippe Landry paid the succession of Michel

Poirier for 123 acres of land *somewhere* in section 49; that Celestin Oliver also paid the sheriff in the foreclosure proceedings against Mrs. Landry, for those same 123 acres *somewhere* in section 49; and that these three plaintiffs and their 24 associates likewise paid Celestin Oliver for those same 123 acres *somewhere* in section 49. On the other hand defendants here have *not even a shadow of title* to more than 152.91 (142.91) acres of land in section 49. For Burton, their president, had acquired from Roussel *only* 152.91 (142.91) acres "constituting the northwest quarter of section 49," although they (defendants) took from him a title calling for *the whole of the north half* of said section. And as to the heirs of Poirier, they may still hold the *legal title* to the lands in section 49; but no one can look into this record (as herein summed up) without being convinced to a moral certainty that *they* also are without a shadow of *equitable interest* in said land.

### XI.

We said that the *first* inquiry, being any attempt to identify the 123 acres by resorting to contemporaneous (or near contemporaneous) descriptions or established boundaries, fails of result. This speaks for itself. As we have said, the plat made for the sheriff's sale in 1872 has been lost or destroyed, and there seems to be no copy thereof extant. Mr. Kleinpeter, civil engineer and surveyor, who was appointed by the court to establish the lines of lots 13, 14, and 15 on said plane, in the partition suit which the heirs of Mrs. Landry once brought against the heirs of Poirier (Edgar Landry et al. v. Michel Poirier et al., 11 Orleans App. 194; Id., 135 La. 731, 66 So. 163), merely hazarded the very natural supposition that they might be composed of the *whole* of original lot No. 1 and the *east half* of original lot No. 2 (i. e., 81.16 plus 40.58, making 121.84 acres, or three lots of approximately 41 acres each).

But *of course* he would not even report that supposition to the court.

### XII.

[5] As to the *second* inquiry, i. e., whether the identity of the 123 acres can be established by a process of elimination as aforesaid, we are constrained to hold that *that* also has failed of result satisfactory to us.

Mr. Durald Wood, civil engineer and surveyor (whose industry and good faith in the matter is vouched for in the written opinion of the trial judge) has herein made a very able and ingenious attempt thus to locate the land, which may be understood by keeping before us our above-mentioned *composite sketch*, and is substantially as follows:

(1) He deducts from the very north of said section and from east of the wedge-shaped indentation made by section 65 a portion measuring 45.66 chains from west to east along the northern boundary of said section from the aforesaid wedge-shaped indentation on the west to (and slightly beyond) the east line of said section, having a width from north to south of about 4.5 chains; and hence an *area* of about 20.5 acres. This portion he designates as having formerly belonged to Benjamin Poirier, who owned the plantation next above that of *Michel* Poirier, and as now belonging to one Alfred Poche. But he does not inform us (nor does this record) when or how Benjamin Poirier acquired this parcel from Michel Poirier, except that he obtained the information from maps and records, which however, were not offered in evidence. But his mere ipse dixit is "no more than a conclusion of the witness as to the effect of 'public record," and is hardly sufficient to establish such conclusion as a fact. Saenger Amusement Co. v. Masur, 158 La. 745, 750, 104 So. 701. But be that as it may, that leaves a balance of 273.10 acres according to the acreage given in the patent (or 292.16 acres, according to the

later official survey) to be accounted for out of the north half of said section 49.

(2) He then designates a portion of ground extending along (and below?) the southern boundary of, and across the whole width of, said half section from west to east, as property formerly belonging to Jean Pierre Richard, but gives neither the dimensions nor the area thereof, nor does he inform us how or when Richard acquired this property from Poirier.

Presumably this is the same parcel of 142.- 91 acres which figures so prominently in the Poirier Case, which Mr, Justice Provosty would have recognized, "without the slightest hesitation," as the northwest quarter of the section, and which Burton and his authors also took to be that same quarter section, but which, according to "the affidavit of a surveyor annexed to a motion for a new trial" in the Poirier Case, is located as the most southern part of the said north half of section 49, having "the full length of section 49 from east to west, and a width north and south of 1163.1 feet."

For Mr. Wood has made a plat of the 123 acres (in bulk, not by lot) which figures on our "composite" sketch as the portion between the letters A, B, C, D, E, F, having an area of 145.70 acres (not 123 acres), the lower line of which he placed at 17.88 chains above the south boundary of said north half section on the west, and at 17.10 chains on the east, equal to a mean distance of 17.49 chains for the whole. But 17.49 chains make 1,154.3 feet, which is only 9 feet less than the distance to the line indicated by Mr. Lovell. In other words, Mr. Wood's lower line is practically Mr. Lovell's upper line.

But pretermitting this difference of 22.70 acres called for by Mr. Wood's plat above the 123 acres called for by the deeds, and the 20.50 acres he ascribed to Alfred Poche (formerly *Benjamin* Poirier), a total of 43.27 acres and entirely too large to be overlooked

in searching for a tract of 123 acres, and pretermitting also the difference between Mr. Wood and Mr. Lovell on the one side, and Barton's authors and Mr. Justice Provosty (who was not without some skill in such matters), on the other side, as to the *location* of said 142.91 acres ascribed to Jean Pierre Richard (formerly), the former placing them as aforesaid in the south half of the north half, and the latter placing them in the northwest quarter of said section 49, pretermitting all this, the fact yet remains, as pointed out very clearly by Mr. Justice Provosty in the Poirier Case, that *there is no evidence of which this court can take cognizance that Michel Poirier ever sold any land whatever in section 49 to Jean Pierre Richard*, for "non constat that, after all, the indexed [but lost] act of sale [relied upon in that case, and the sole basis upon which any such claim could be made] did not call for some other land than this 142.91 acres in section 49."

And to show why Mr. Wood's testimony amounts only to a mere general conclusion, and is not *evidence*, we quote as follows from his cross-examination (Transcript, 116):

"Q. Will you kindly explain how you come to the conclusion that those lots (lots 13, 14 and 15) actually, in 1874, contained 145.70 acres? A. From a thorough search of the records, after months of work, and with the two maps which I have here, and from surveys that I made in that locality, and in one case in the record where it states about 148 or 149 acres for three lots, that the sum total of each lot is specified and the sum total of the whole is specified and the two do not check in that particular act; and after all of that I have come to the conclusion that those lots are right where I have located them. * * *"

And again (Transcript, 125):

"Q. Well now, will you please tell us what was the total acreage in the north half of section 49, that you were figuring on in your work. A. Mr. Leman, I was figuring, in making my map—I made my map according to the maps of A. J. Powell, principally, after a search of the records, and I didn't know what the acreage

of that was until after I made the survey, and then I calculated what the acreage was. * * *"

The fact is that *nowhere* in Mr. Wood's testimony has he pointed out or even mentioned any *particular* record or document, save and except "the maps of A. J. Powell." And hence to accept his testimony in this case as conclusive thereof would be simply *allowing him to decide the case*; and to do so upon such evidence as *he* might deem relevant giving it such weight as *he* might deem it entitled to. Which *of course* cannot be.

And we fully agree with the district judge where he says:

"I have given Mr. Wood's testimony the most careful study and consideration that I could; and whilst he is to be commended for the serious and painstaking efforts he made to establish the exact location of the land embraced under the description given, still I do not feel that his testimony carries with it that preponderance needed to justify this court in arriving at the same conclusion he arrived at—that is, that he has definitely identified the property."

### XIII.

[6] In conclusion we may say that we too have given this case most careful consideration, with every desire to give plaintiffs some relief if it were possible to do so; considering that all the *equities* hereof are with plaintiffs and that defendants are mere trespassers as to at least one-half the land they lay claim to. Wherein *this* case differs from the Poirier Case in which (as may be gathered from what has gone before) the very reverse was true.

But we feel that we are powerless to grant any such relief *without violating every* principle of law applicable in cases of this nature and setting up precedents fraught with consequences dangerous to the security of landed property; and we are therefore constrained to affirm the judgment of the court below rejecting plaintiff's demand.

### Decree.

The judgment appealed from is therefore affirmed.

### On Rehearing.

ROGERS, J.   On the rehearing of this case, appellants do not question the correctness of the finding in our original opinion that they have not sufficiently identified and located the tract of land described in their petition.   In presenting their side of the controversy for the second time before the court, they have devoted their argument solely to the proposition that they are the owners of the land, although not described with sufficient certainty to enable them to recover it in a petitory action; that it is situated in section 49, township 12 south, range 15 east; and that as the defendant has cut and removed all the timber which formerly grew on the section, they are entitled to recover judgment as prayed for in their petition.

[7] We have reached the conclusion, on the further consideration of the case, that plaintiffs have not made such a showing as would warrant us in rendering a judgment in their favor.   Viewing their present contention in all its phases, we cannot escape the stubborn fact that in order to be entitled to a recovery for the alleged trespass of defendant, it was incumbent upon plaintiffs to show they were the owners of the land.   Sorrel v. Carlin, 23 La. Ann. 528;  Collins v. La. Sawmill Co., 132 La. 161, 61 So. 150;  Cusachs v. Salmen Co., 146 La. 676, 83 So. 893.   They were unable to do this,

[8] Plaintiffs' claim of ownership is founded through mesne conveyances upon the sale made in the succession of Michel Poirier to Mrs. Philippe Landry of "a portion of land situated in section 49 of township 12 south, range 15 east, containing 123.01 acres." This description, however, is too vague to locate and convey title to any land whatever.   Poirier v. Burton-Swartz Cypress Co.,

127 La. 936, 54 So. 292. Therefore, when Mrs. Landry undertook to mortgage the land to Dupre, Reine & Co., she placed an incumbrance upon property which, doubtless, she thought she owned, but which, in point of fact, she did not own; hence the sale in the foreclosure proceedings at which Celestin Oliver became the purchaser of the land as subdivided on the plan made at the instance of the sheriff of the parish of St. James conveyed nothing to the said purchaser but a title which, at best, could only become perfected by the prescription of ten years acquirendi causa. This prescription, however, is clearly inapplicable, since neither Celestin Oliver nor his successors in title were ever in physical possession of the land. Bruton v. Braselton, 157 La. 64, 101 So. 873.

For the reasons assigned, our former opinion and decree are reinstated, and the said decree is now made the final judgment of the court.

THOMPSON, J., dissents.