LAND, J.
 

 The International Paper Company operates two pulp and paper mills in the town of Bastrop,, La., and has operated them for a number of years.
 

 In connection with its operations, defendant company discharges refuse and waste substances from its mills into the waters of Stalkinghead bayou, a natural drain for the entire town of Bastrop and all of its industries.
 

 After being discharged from this bayou into a brake two miles southwest of the corporate limits of Bastrop, the waters emerge from the brake into a well-defined channel, known as Black bayou, and pass farther down through another brake into Boeuf bayou.
 

 The Spyker plantation, through which the waters of Black bayou flow, is located several miles southwest of the town of Bastrop, and contains approximately 3,000 acres of land.
 

 Plaintiffs seek to recover against defendant company:
 

 First. Damages to standing timber on the Spyker plantation, alleged to have been killed by water and poisonous waste substances emptied into Stalkinghead bayou by defendant company from its mills.
 

 Second. Damages to land belonging to-plaintiffs, which is alleged to have been rendered commercially valueless by virtue of the accumulation thereon of water and poisonous waste substances from the mills of defendant company.
 

 Plaintiffs further applied to the lower court for an injunction prohibiting defendant company from discharging refuse and poisonous waste substances into the waters of Stalking-head bayou and Black bayou.
 

 An exception of nonjoinder of parties was filed by defendant company.
 

 The plea of prescription and exception of no right or cause of action, tendered by defendant company, were referred to the merits.
 

 An answer was also filed by defendant company setting out the following defenses:
 

 First. That there was nothing poisonous or harmful to timber or land in the waste discharged from its mills.
 

 Second. That if any damage has been done to plaintiffs’ timber, it has been caused by the volume of water released, and not by chemicals or acids therein contained, and that, if Black bayou is not capable of taking care of the waters discharged by defendant company from,its mills, it is because of its congested condition, occasioned by the cutting of timber on plaintiffs’ lands and on other lands im
 
 *583
 
 mediately below plaintiffs’, thereby creating a large quantity ,of debris in the channel, of Black bayou:
 

 Third. That salt water, released from gas wells, drained into Black bayou on the Spyker plantation and is responsible for the death of a large portion of the timber.
 

 Fourth, That a large amount of the deád timber on plaintiffs’ lands was caused by disease and old age.
 

 The exception of nonjoinder of parties, filed by defendant company, was overruled. The plea of prescription was maintained, the demands of plaintiffs were rejected in toto, and plaintiffs’ suit was dismissed. .
 

 ■ From this judgment, plaintiffs have appealed.
 

 1. At the outset, it is well to note that plaintiffs admit that they have failed to prove that the waste released from defendant company’s mills contains matter poisonous to timber, and have adopted the theory of defendant company, that the damage incurred by plaintiffs was caused by the volume of water discharged into Stalkinghead bayou, and not by any chemicals or acid therein contained.
 

 2. Although defendant company pleads the prescription of one, two, three, and five years against plaintiffs’ demands, it is conceded that the prescription of one year is applicable.
 

 ' -The present suit was filed February 13,1929, but, by agreement of counsel with reference to the plea of prescription, it was stipulated that .“the rights of plaintiffs will be the same as if they had filed suit and secured notice, on defendant as of date May 2, 1928.”
 

 Counsel for plaintiffs state in their brief: “The judge of the- lower court found, as a matter of fact, that an
 
 indefinite
 
 amount of timber
 
 died'
 
 subsequent to May 2, 1927, and and that an
 
 indefinite
 
 amount of said timber died prior to said date, but sustained the plea of prescription on the theory that
 
 the burden of showing the amount-of the' timber which died prior to May
 
 3,
 
 1927 was on plaintiffs
 
 (Italics ours.)
 

 Plaintiffs contend that, where part of plaintiffs’ demand is barred and part is not, it. is incumbent on the party pleading prescription to show what portion of the damages proved occurred anterior to the year preceding the institution of the suit, or, in other words, what part of plaintiffs’ demand is prescribed.;
 

 Plaintiffs contend also that a party who' pleads prescription is bound to sustain the plea.
 

 This is a suit, however, relating
 
 to injury to land and to destruction of timber,
 
 and, .£l; though the prescription of such an action is one year, it is expressly provided in article 3537 of the Civil Code, as amended by Act No. 33 of 1902, that prescription runs “where land, timber or property has been
 
 injured,
 
 cut, damaged
 
 or destroyed from the date knowledge of such damage is received
 
 by: the owner thereof.” (Italics ours.)
 

 In Ducros v. St. Bernard Cypress Co., 164 La. 795, 796, 114 So. 654, 657, in commenting upon article 3537 of the Civil Code; as amended, the court said that: “Under this article, as interpreted,
 
 the burden is on the-one against whom the prescription is pleaded
 
 to show when he obtained knowledge' of' the trespass, whenever a year has intervened between the infliction of the damage and the service of citation in the suit to recover therefor. Citizens’ Bank v. Jeansonne, 120 La. 393, 45 So. 367; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234.” (Italics ours.)
 

 One of the mills of defendant company was completed in 1922 and the other ini 1924, and’ both have been operated continuously since-these dates.
 
 ■■■' ‘
 

 
 *585
 
 Some of the timber is shown to have been destroyed during the lifetime of B. B. Spyker, the father of plaintiffs, while he was residing on his plantation.
 

 ‘ The plaintiffs, the sole heirs of D. B. Spyker,' deceased, accepted his succession and were sent into possession of his estate February 8,-1927. .
 

 Any right of action that D. B. Spyker might have had against defendant company for damages to his land or timber, at the date of his death, was inherited by the three plaintiffs, and any action they might have had after the death of . B. B. Spyker must have been brought within one year after his death in 1926, under article 2315 of the Civil Code, as amended by Act No. 159 of 1918, or satisfactory proof must have been adduced that the plaintiffs’ father had no knowledge of the damages. This the plaintiffs have failed to do.
 

 , D. F. Spyker, .one of the plaintiffs, had continuously resided on the Spyker plantation sipce the year 1920, to the date of the filing of this suit, May 2, 1927, and has been manager of the plantation and agent of the other two plaintiffs.
 

 . O. F. Spyker had the same, if not better, opportunity of observation' than his father had, and evidently knew of the damages inflicted long before November, 1927, the date fixed in his. testimony.
 

 Although the two other plaintiffs were not present on the Spyker plantation, yet they left the whole matter of management in the hands of-B. F. Spyker, and they are therefore bound by the knowledge which he had as their agent. Tr. 139, 146. Poirier v. Burton-Swartz Cypress Co., 127 La. 936, 54 So. 292.
 

 Our conclusion is that the plea of prescription of one year is good as to timber destroyed before May 2, 1927, on the ground that the plaintiffs knew, or should have known of the damages, and more than a year elapsed after the prescription began to run and before suit was filed.
 

 3. Plaintiffs rely solely for their case for damages on the theory that part of the timber died before May 2,1927, and a part died subsequent thereto, and, as the reeord does not show the amount that died before or after May 2,1927, that plaintiffs can recover for the whole amount, for the reason that the burden of proof is on defendant company.
 

 In our opinion, the burden of proof .is on the plaintiffs, for the reason that they were in the actual physical possession of the property, individually or through an agent, and were in a better position to know when the damages occurred than was defendant company. The law is that, when one of the parties to a suit has more means of knowledge concerning a matter to be proved than another, the onus is on him. State v. Bischoff, 146 La. 748, 84 So. 41; Griffin v. Drainage Commission, 110 La. 840, 34 So. 799, 801; Jones v. T. & P. Ry. Co., 125 La. 542, 51 So. 582, 136 Am. St. Rep. 339.
 

 In Griffin v. Drainage Commission, above cited, it is said: “Assuming, for the purposes of this case, that defendant was in fact -and in law responsible for the damage to plaintiff’s building,
 
 he
 
 [plaintiff]
 
 does not show tchat part of that damage was sustained after the period fixed for prescription *
 
 * * ” (Italics ours.)
 

 In speaking of Griffin v. Drainage Commission in Jones v. T. & P. Ry. Co., 125 La. 546 and 547, 51 So. 582, 583, 136 Am. St. Rep. 339, the court said: “The point there decided was that, 'where the injury to á house from an excavation close to its foundation is gradual,
 
 prescription is not suspended by the continuousness of the injiury, but rims on the damages as they occur.”
 
 (Italics ours.)...
 

 
 *587
 
 In Egan v. Hotel Grunewald Co., 134 La. 740, at page 752, 64 So. 698, 702, the court said: “We are of opinion that the day the injury was suffered because of a wrongful act
 
 is the date from which presci'iption runs for the amount of damages committed on that day.”
 
 (Italics ours.)
 

 At page 753 of 134 La., 64 So. 698, 702, is also said: “ ‘If damages are continuing and progressing,
 
 one cannot postpone bringing the action for some time after the year and then sue for the whole damages.’ ”
 
 (Italics ours.)
 

 Judgment affirmed.