CAVANAUGH, Judge.
The plaintiffs sued the defendants individually and in solido for the value of timber cut and removed from 45 acres of land situated in the Parish of East Baton Rouge described in their petition. The suit is a tort action and plaintiff claims a value of $40 each for ten of the trees containing 3,666 feet of timber, on account of their special and unusual value and beauty, and $30 for thirty-four of the trees containing approximately 15,404 feet of timber. Plaintiffs allege that they did not receive positive knowledge of the trespass until February 28, 1951. Suit was filed on February 25, 1952. The defendants filed a plea of prescription of one year, in which it alleged that the plaintiffs had acquired sufficient knowledge that the timber was allegedly removed for more than a year before suit was filed. The plea of prescription was referred to the merits, and then the defendants filed a joint answer of general denial, in which it is alleged that the timber was not cut by any agent of defendant and, finally, reurged the prescription of one year. On a trial on the merits, judgment was in favor of the plaintiffs and against the defendants individually and in solido for $592.-47. The Court found that the timber was worth $45 per thousand feet, and that 13,166 feet was the quantity cut and removed. It filed written reasons for its judgment and fully covered the facts in the case, and, if *926 it were not for the plea of prescription, we would affirm the judgment.
Article 3536 of the LSA-Civil Code provides that action for damages for offenses and quasi-offenses is one year and Article 3537 provides that the prescription mentioned in Article 3536 where land, timber or property has been injured, cut, damaged or destroyed, from the date knowledge of such damage is received by the owner thereof.
Plaintiffs and defendants are adjoining landowners and were in actual possession, each of their respective tracts of land, when the cutting of the timber happened. It is admitted that the plaintiff had knowledge of the cutting of timber by defendant some time during the fall of 1950 on what he thought were his lands, but plaintiff was not certain or positive that the timber was being cut from his lands. It was necessary for the plaintiff to have Mr. Mudinger relocate the line, which he had previously surveyed, but which at the time of the cutting was obliterated. After the line was relocated, plaintiff determined the quantity of timber cut and removed, and made demand on defendants for payment. Knowledge of ■the probable trespass was obtained during the month of November or December, 1950, but positive knowledge of the trespass was not obtained until February 27, 1951, when Mr. Mudinger’s report was received by plaintiff.
The question for rts to decide under the above finding of fact is whether the prescription commences to run from the date of knowledge of the probable trespass, or from the date of the actual or positive knowledge of the trespass.
It is the settled jurisprudence in this State that an owner suing for the value of timber tortiously cut and removed from his property without his consent does not have to have actual knowledge of when the trespass was committed, but it is only necessary to have such knowledge as requires him to make inquiry after he learns that the trespass has been committed. If he thinks or has just reason to believe that his lands have been trespassed upon and timber wil-fully cut, it is his duty to ascertain the true facts within a year and file his suit within a year from the time the knowledge came to him. It is not necessary that he know that an actual trespass was committed, the exact quantity of the timber taken or have positive knowledge of its value before he files his suit. If it is necessary for him to obtain this information, he has one year from the time he first has knowledge of the trespass to obtain that information and file his suit.
The evidence in this case conclusively shows that the plaintiff had knowledge that this timber was cut during the fall of 1950, because he talked to the defendant Sumrall about it and later employed a Civil Engineer to establish the lines. The engineer’s bill for services for relocating the line or setting stakes every 200 feet was submitted on February 27, 1951, but he had actually made a survey of the lands, according to the map filed in the record by plaintiff, on November 9, 1947, and all the work required of the surveyor was that he place the stakes every 200 feet because the line had, for some reason, become obliterated during that time by moving a wire fence back and forth for pasturage purposes. The prescription commenced to run when the plaintiff had sufficient knowledge to put him on inquiry and on his guard to ascertain the true facts. Poirier v. Burton-Swartz Cypress Co., 127 La. 936, 54 So. 292; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234; Ducros v. St. Bernard Cypress Co., 164 La. 787, 114 So. 654, all cited in Iberville Land Co. v. Amerada Petroleum Corporation, 5 Cir., 141 F.2d 384. Urania Lumber Co. v. Powers & Critchett Lumber Co., La.App., 166 So. 190, 191; Midkiff v. Long-Bell Lumber Co., 7 La.App. 393.
The knowledge in this case was brought to the plaintiff at the time he went on the property and talked to the defendant Sum-rall during the fall of 1950. This was referred to in a letter from plaintiff to defendant dated June 16, 1951, part of which reads:
*927 “Some time ago, you cut some timber on my place which adjoins your property on the Plank Road. When I discovered you were cutting some of my trees, I spoke to you about the matter and you told me that you had instructed the contractor to stop cutting along your north line which adjoins my property.”
Letters were addressed on that date to each of the defendants, Sumrall and Plank Road Development Company, Inc. These letters referred to the conversation had between plaintiff and defendant at the time the timber was being cut and when plaintiff discussed the matter with the defendants.
In Young v. International Paper Co., 179 La. 803, 155 So. 231, 232, the Supreme Court of Louisiana, on the sufficiency of notice to start the prescription to running, said:
“The petition herein was filed on May 9, 1929. The plaintiff urges that he did not have actual notice of the true extent of the damage to his land and timber until July, 1928 and also that the only knowledge that he had, as to possible damage, was on May 28, 1928, just within a year prior to the filing of suit, at which time he heard that his land was under water, and so testifies. The preponderance of the evidence, however, shows that plaintiff has fallen into error as to when he had acquired sufficient knowledge to start prescription to running, for all that is required to do so is the acquisition of sufficient information, which, if pursued, will lead to the true condition of things. Nat. Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234; Spyker v. International Paper Co., 173 La. 580, 138 So. 109.”
The Court maintained the plea in that case because the plaintiff at least had knowledge for one month before the date the plaintiff alleged the prescription commenced to run. In our case, plaintiff had notice for at least two months before the date of the beginning of the prescription he alleged.
The plea of prescription of one year should have been sustained under the facts.
For the reasons assigned, the judgment of the District 'Court is reversed, the plea of prescription of one year sustained and plaintiffs’ suit dismissed at their cost.