At the trial the accused took the stand in his own behalf.

After interrogation by his own counsel he was submitted to the prosecuting attorney for cross examination, and was asked this question:—

"How many times have you been in trouble?"

To which his counsel objected on the ground that it was an attempt on part of the State to prove the bad character of the witness; was an attack upon his character. It was urged that the defense not having put in issue his good character, it was not competent for the prosecution to seek to show he was a man of bad character.

The District Attorney thereupon stated that his purpose was not to impeach the character of *the accused,* but to affect the credibility of *the witness.*

The court ruled that since a good character for the accused had not been sought to be established by the defense, the State had no right to raise the issue of bad character; but that the question asked the witness was proper for the purpose of affecting the credit to be given to his testimony as a witness on the stand. And the judge then and there charged the jury the answer of the accused to the question was to be by them considered only in so far as it might affect his veracity as a witness—that and nothing else.

To this ruling a bill was taken on behalf of the accused, and this appeal is predicated on the same.

The ruling objected to is sustained by the decision of this Court in State v. Murphy, 45 La. Ann. 958, 13 South. 229.

Judgment affirmed.

---

(34 South. 747.)

No. 14,822.

## TOWN OF JENNINGS v. MARTIN.

(June 22, 1903.)

### APPEAL—DISMISSAL.

1. With consent of both plaintiff and defendant, the appeal is dismissed.

(Syllabus by the Court.)

Appeal from Mayor's Court, Town of Jennings; W. F. Humphreys, Judge.

Action by the town of Jennings against John Martin. Judgment for .plaintiff. Defendant appeals. Dismissed.

Sompayrac & Toomer, for appellant. Cline & Cline, for appellee.

### On Motion to Dismiss the Appeal.

BREAUX, J. The town of Jennings moved to dismiss the appeal on the ground that this court is without jurisdiction ratione materiæ.

The defendant did not oppose this motion; on the contrary, asked the appeal be dismissed, at his costs.

On the motion of both parties looking to the same end, dismissal of the appeal, we cannot do less than to decree accordingly.

The appeal is dismissed.

---

(34 South. 747.)

No. 14,817.

## SHIELDS v. WHITLOCK & BROWN.

(June 22, 1903.)

### PRESCRIPTION—TRESPASS ON LAND.

1. Where, in an action, governed by the law as it stood prior to the adoption of Act No. 33, p. 41, of 1902, for damages for trespass upon land, including the cutting and removing of timber, it appears that no timber has been cut or removed and no other trespass committed within the year preceding the institution of the suit, the plea of prescription of one year should be sustained.

Blanchard, J., dissenting.

(Syllabus by the Court.)

Appeal from Eleventh Judicial District Court, Parish of Natchitoches; Charles V. Porter, Judge.

Action by Edward Shields against Whitlock & Brown. Judgment for defendants. Plaintiff appeals. Affirmed.

Breazeale & Breazeale, for appellant. Jack & Fleming, for appellees.

### Statement of the Case.

MONROE, J. The plaintiff filed this suit July 12, 1902, and he alleges that the defendants have trespassed upon, and have denuded of its timber, a tract of land owned by him, containing about 360 acres, and described as the N. ½ and the N. E. ¼ of the S. W. ¼ of Sec. 15, T. 9, R. 10 W.; that he learned of their depredation only within

a month before the institution of this suit, and after the timber had been removed and the land rendered valueless; that the timber so taken was worth $3,097.30; and that he has been otherwise damaged, the particulars being stated. He accordingly prays for judgment in the sum of $5,047.30.

The defendants, for answer, deny the allegations of the petition, except as specially admitted. They especially deny that plaintiff is the owner of the land described, and allege that, until within a few days of the institution of this suit, they did not know of any right or claim on his part thereto, but believed that they were the rightful owners and possessors of the same. They further allege that on December 11, 1900, they purchased from D. C. Scarborough the N. W. ¼ and the W. ½ of the N. W. ¼ of the N. E. ¼ of Sec. 15, T. 9, R. 10 W., containing 180 acres, and that Scarborough had acquired the same July 7, 1900, by purchase at a sale for the taxes of 1899 assessed to S. D. Carpenter, plaintiff's alleged author; that, prior to their purchase from Scarborough, they had bought from Boyd T. Scott all the timber on the S. W. ¼ and the S. ½ of the N. E. ¼ of the section mentioned; that, after so purchasing, they took possession of the land, and cut the timber until about 18 months before the institution of this suit, when they ceased to do so; and that they were not disturbed in their possession during that period. They further allege that the amount of timber taken by them was about 500,000 feet, worth 50 cents per 1,000, and they deny that the land has been denuded of its timber or rendered valueless. And finally they plead the prescription of one year, as against an action for trespass and tort, and pray that there be a judgment in their favor.

## Opinion.

The evidence, as we think, shows that the defendants had ceased cutting timber upon the land in question prior to July 12, 1901, and it does not appear that they afterwards committed any acts of trespass thereon. Varnell and Winn, who were sworn as witnesses for the plaintiff, were the men who, as employés of the defendants, did the cutting. Varnell, in his examination in chief, testifies as follows, to wit: "Q. Who employed you? A. Brown & Whitlock. Q. When was that?

A. In 1901. Q. How long were they engaged in cutting the timber from these lands? A. I could not tell, exactly. Q. Do you know when they ended? A. No, sir; somewhere, though, in May or June—April or May—somewhere along there. Q. This year? [referring to the year 1902.] A. No, sir; last year."

Now, it is true that upon his cross-examination, he is asked, "How long did you cut timber there for Brown & Whitlock?" and he replies, "I think that I commenced about the last of January or the first of February, and I quit the 3d day of December, 1901." But he had, just before, been asked about other lands upon which the defendants were cutting timber, and, taking his two statements together, and construing them with other testimony in the record, we understand him to mean that whilst the defendants finished cutting on the land in question in April, May, or June, he continued to cut for them on other lands in the same neighborhood until December, 1901.

Winn, the other witness mentioned, was interrogated and answered as follows: "Q. Who did you cut timber for? A. For Brown & Whitlock. Q. When did you cut it? A. About 1900, I think. Q. What part of the year 1900? A. From the first of July to about the middle of January, 1901." Counsel for plaintiff say in their brief that this "must be an error either of the stenographer or of the witness, for the reason that Whitlock & Brown did not buy from Scarborough until December 11, 1900, and did not commence to cut until after" their purchase; and they also say that it is their recollection that the witness said that he commenced to cut in January, and quit in July, 1901.

It appears, however, that, under a verbal agreement with one Scott, the defendants had begun to cut on some of the land which the plaintiff claims before their purchase from Scarborough; and, whilst it would make a material difference if the witness testified as the counsel think he did, we are bound to assume, in the absence of evidence to the contrary, that he has been correctly reported. Beyond this, Whitlock testifies that they quit cutting on the land in question May 1, 1901, and Lester testifies that they quit in the spring of 1901; and there is no witness who says to the contrary, unless Varnell, to whom we have referred, should

be so construed. It is further suggested that the land had on it about 4,000 feet of timber to the acre, or, say, a total of 1,440,000 feet, and that, estimating the capacity of the defendants' mill at 200,000 feet per month, they could not have cut that amount between December 11, 1900, and July 12, 1901. If it were certain that the two estimates given were correct, the proposition, as stated, would amount to a demonstration. But, as we have stated, the defendants began cutting before December, 1900; there is evidence going to show that the average amount of timber on the land was less than 4,000 feet per acre, that there is still some timber left, and that the mill can cut 225,000 feet per month, to which is to be added the direct testimony of plaintiff's and defendants' witnesses to the effect that, as a matter of fact, apart from any calculation, the defendants quit cutting on the land claimed by the plaintiff before July 12, 1901. Finally, it was suggested in the oral argument (and there seemed to be much force in the suggestion) that there ought to be a difference between the application of the prescription relied on as between the claim for damages resulting from the trespass, and the claim for the value of the property belonging to the plaintiff, which the defendants have appropriated to their own use. We feel very much inclined to the view that there ought to be such a difference, but it does not seem to be recognized by the law or the jurisprudence of this state.

"Personal actions arise from offenses, as when one has become liable to another for injury he has inflicted on him by some crime or offense, such as theft or slander." Code Prac. art. 31.

Such actions, i. e., actions for damages resulting from offenses, as also actions resulting from quasi offenses, are prescribed in one year. Civ. Code, art. 3536. The plaintiff alleges that the defendants trespassed upon his land, and cut and removed his timber, and that "he only learned of the trespass so willfully committed on his property within the last month, and at once took steps to stop the depredation. * * * He shows that the defendants are co-trespassers and liable in solido. * * * Wherefore he prays" for a judgment in damages. Dealing with a question somewhat similar to that

which we are now considering, this court has held that, where a plantation belonging to one person is seized and detained under a writ of attachment issued against another, such seizure and detention constitute a quasi offense, and that the claim for damages which is barred by the prescription of one year includes that for all rents and revenues, save those arising during the year immediately preceding the filing of the suit; holding, also, that it included the claim of the plaintiff for the value of sugar and molasses that had been seized with the plantation. De Lizardi v. N. O. Canal & Banking Co., 25 La. Ann. 414. The same construction of the law must be applied in the instant case. It may be remarked, in conclusion, that Act No. 33, p. 41, of 1902, amending article 3537, Civ. Code, was not promulgated until after this suit was filed, and hence does not affect the question of prescription here presented.

The judgment appealed from is affirmed.

BLANCHARD, J., dissents.