(45 South. 367.)

No. 16,623.

CITIZENS' BANK OF LOUISIANA v. JEANSONNE et al.

(Dec. 16, 1907.)

1. EXECUTION—DEED—DESCRIPTION OF PROPERTY.

A sheriff's deed which fails to identify the land intended to be sold is void for uncertainty, and cannot serve as a basis for prescription.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 21, Execution, §§ 921–924.]

2. TRESPASS—LIMITATIONS—BURDEN OF PROOF.

Under the Civil Code the general rule is that all actions for damages for offenses and quasi offenses are prescribed by one year from the date the damage was sustained. Act No. 33, p. 41, of 1902, provided that such prescription runs "where land, timber or property has been injured, cut, damaged, from the date knowledge of such damage is received by the owner thereof." Held, that where the defendant is sued as a trespasser for damages for timber cut on lands, and pleads the prescription of one year, the burden is on the plaintiff to prove the date that knowledge of the alleged trespass was brought home to him.

3. SET-OFF AND COUNTERCLAIM—EVIDENCE.

Defendant has no claim in equity against the plaintiff for taxes paid where he has been more than compensated by the value of timber converted to his own use.

4. COVENANTS—BREACH—DAMAGES.

An evicted defendant has no claim against his warrantor for attorney fees.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Covenants, § 261.]

(Syllabus by the Court.)

Appeal from Fourteenth Judicial District Court, Parish of Avoyelles; Gregory Horatio Couvillon, Judge.

Action by the Citizens' Bank of Louisiana against Ernest Jeansonne and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Lafargue & Lafargue, for appellant Ernest Jeansonne. Robert P. Hunter & Sons, for appellant Bertrand Weil. Peterman & Couvillon, for appellant Norman Jeansonne. Joseph Clifton Cappel, for appellee Citizens' Bank of Louisiana.

LAND, J. This is a petitory action to recover the E. ½ of section 30, township 1, N., range 3 E., situated in the parish of Avoyelles. Plaintiff also sued to recover $1,000 damages for timber cut and removed by the defendant, alleged to be a mere trespasser on the premises.

On exception, the plaintiff filed an amended petition, setting forth that it purchased in 1868 at sheriff's sale the undivided half of the land in dispute as the property of H. M. Keary, who at the date of said sale owned the whole of said half section, having acquired the same in a partition made in 1850 with one Jabez Tanner.

The defendant called his vendors in warranty, and they answered. The defense was that the defendant and his authors were possessors in good faith under a valid chain of title derived through mesne conveyances from Jefferson Davis, who in 1872 acquired the title of H. M. Keary at a sheriff's sale. Defendants pleaded the prescription of 10 and 20 years' acquirendi causa, and the prescription of 1 year against the claim for damages.

The trial resulted in a judgment decreeing the plaintiff to be the owner of the undivided half of the land in controversy, and sustaining the plea of prescription against the claim for damages. Defendant recovered judgment against his warrantor. The defendant and Bertrand Weil, one of the warrantors, have appealed. The plaintiff has answered the appeal, praying that the judgment be amended by decreeing it to be the owner of the

whole of the half section and by condemning the defendant to pay damages.

The E. ½ of section 30, the N. E. ¼ of section 31, the N. E. ¼ of N. W. ¼ of section 31, and the S. W. ¼ of the S. W. ¼ of section 29, T. 1 N., range 3, containing 639.60 acres, were entered and patented to Wm. H. Scott and Jabez Tanner. On April 28, 1848, Scott sold his undivided half interest in all of said lands to Hugh M. Keary. On April 2, 1850, Hugh M. Keary and Jabez Tanner made a voluntary partition of said lands; the former acquiring the E. ½ of section 30, and the latter the remainder of the lands. In December, 1868, the sheriff of the parish of Avoyelles, under a writ of seizure and sale issued from the district court of said parish in the suit entitled "Citizens' Bank of Louisiana v. Keary Bros." sold to said bank certain lands known as the "Catalpa Grove Plantation," and also another tract of land situated in the same parish, adjoining to and in the rear of said plantation, containing 320 acres, more or less, being the half of the following lands purchased from Wm. H. Scott, on the 28th April, 1848, to wit:

"East half of section 30, the northeast quarter of section 31, the northeast quarter of the northwest quarter of section 31, and the southwest quarter of section 29, in township one North, of range 3 East, as per patent bearing the No. 427, delivered by the state of Louisiana to Jabez Tanner and Wm. H. Scott on the 24th June, 1850."

On July 6, 1872, under a writ of seizure and sale issued from the Seventh district court for the parish of Orleans, in the suit of M. J. De Lizardi, Liquidator, et al., Jefferson Davis Subrogated, against Hugh M. Keary, the sheriff of Avoyelles sold five tracts of land, with the buildings and improvements thereon, also steam engine, machinery, and all other things thereto belonging or in any way appertaining. All of said property was adjudicated to Jefferson Davis for the price of $1,075. The second tract so sold was described as follows:

"Another tract of land containing three hundred and twenty acres, situated in the same parish, bounded north and east by lands of said Keary and south and west by lands belonging to the estate of Wm. M. Lambert and being the same tract purchased by said Keary from Tanner."

Defendant's contention is that the second tract as described covers the E. ½ of section 30.

On January 27, 1900, the widow and daughter of Jefferson Davis sold the E. ½ of section 30, and other lands to Peter B. Compton for the price of $75. On June 11, 1900, Compton sold the same lands to Bertrand Weil for $700. In January, 1902, Weil sold portions of the E. ½ of section 30 and section 29 to Ernest Jeansonne and Norma Jeansonne for the price of $1,791.12. In November, 1903, Norma Jeansonne sold to Ernest Jeansonne her undivided half interest in all the lands purchased from Weil, except certain portions previously sold by them.

At the date of the institution of this suit the defendant was in possession as owner of seven certain lots in the E. ½ of section 30, containing 140 acres.

Plaintiff has no title beyond the undivided half of the E. ½ of section 30, being the interest therein purchased by Keary from Scott as the deed itself recites. This title was recorded in 1868, and, being the oldest title from the common author, must prevail, unless the defendant has acquired an adverse title by prescription.

The plea of the prescription of 10 years is based on the sheriff's sale to Jefferson Davis, made on July 6, 1872, of the second tract described in the deed. Plaintiff contends that the description of this tract is too vague and idefinite to identify it with the E. ½ of section 30.

Couvillon, a surveyor, testified that the deed to Jefferson Davis does not identify any of the five tracts described therein with the E. ½ of section 30.

Messick, surveyor, witness for defendant,

testified that the western boundary of E. ½, section 30, is the W. ½ of the same section entered by one Lambert, and that it is bounded on the east by lands of William Bolt, purchased by H. M. Keary from the estate of Bolt. When this purchase was made is not stated. The witness stated further that the Davis deed indicated this tract; "but even in that instance it was very imperfect." The same witness testified that the lands in sections 30 and 29 were back of the North Bend plantation, northeast, but winds up by saying that he did not know what is the North Bend plantation. On his cross-examination the same witness testified that he knew the open land on said plantation, that the land in section 30 was about 1½ miles back, and that he did not know whether or not it touched the North Bend plantation. This witness does not pretend to say that the E. ½ of section 30 is bounded on the south by the lands of Lambert. In fact, he gives no south boundary, and no north boundary, and his east boundary is not correct.

The deed to the Citizens' Bank, as already stated, describes the E. ½ of section 30 as adjoining the Catalpa Grove plantation. In 1872 this plantation belonged to the Citizens' Bank.

The witness Couvillon, in rebuttal, marked on a plat the lands acquired by Tanner in the partition with Keary in 1850, and it appears therefrom that Tanner owned lands bounding the E. ½ of section 30 on the south and partly on the east. The same plat shows that one Bode owned the other lands on the east.

The result of the evidence is that Messick's testimony identifies only one corresponding boundary, that is on the west; and it is positively shown that the boundaries on the south and east do not correspond. Lambert may have owned other lands bounding some other tract on the west. The identification by acreage is inconclusive as all half sections

contain 320 acres, more or less. The identification by reference to a purchase from Tanner is without significance, because Keary never purchased 320 acres of land from Tanner. Keary acquired in the partition with Tanner only an undivided half interest in the E. ½ of section 30, and owned only such undivided interest at the time of the sheriff's sale to Jefferson Davis. The title to the other half interest was in the Citizens' Bank. The tract in dispute has always been described in the titles as the E. ½ of section 30, and, if the sheriff intended to sell the same, why did he disregard the certain description contained in the deeds, and also the fact of record that Keary owned only a half interest in the property. The description of the tract sold to Jefferson Davis is in our opinion so defective as to be void for uncertainty.

Hence there is no basis for the prescription of 10 years, and the evidence does not sustain the prescription of 30 years. There is no evidence that Jefferson Davis at any time ever paid any taxes on the land or ever exercised acts of ownership over it more than 30 years prior to the institution of this suit. The evidence leaves it doubtful whether any one cut any timber on the land prior to 1876. No taxes are shown to have been paid on the land until 1894, when it was assessed to H. M. Keary, and continued to be so assessed until the year 1900, after which it was assessed to the warrantor Weil and to his vendees.

Prior to the adoption of Act No. 33, p. 41, of 1902, actions for damages for trespass upon lands by cutting and removing timber were prescribed by one year from the date of the trespass. Shields v. Whitlock & Brown, 110 La. 714, 34 South. 747; Gilmore v. Schenk, 115 La. 386, 39 South. 40. By the Act No. 33, p. 41, of 1902, it was provided that the prescription of one year runs "where land, timber or property has been injured,

cut, damaged or destroyed, from the date knowledge of such damage is received by the owner thereof."

The petition alleges that, since his illegal possession of the premises under a null and void title, the defendant, a mere trespasser, has sold, disposed of, cut, and removed the greater portion of the timber on said tract of land, estimated at 250,000 feet and worth over $1,000. Defendant and Norma Jeansonne purchased the property on January 23, 1902. This suit was filed April 3, 1906. A surveyor testifying for plaintiff estimated the trees cut on the land within five or six years from the date of the trial at 600, averaging 300 feet per tree, and worth $540. The defendant testified that more than two-thirds of this timber had been cut before he went on the land. There is no evidence showing when the plaintiff received knowledge of the trespass complained of in the petition. It is not alleged when notice of the trespass was first brought home to the plaintiff. We think that prescription having been pleaded, the burden of proof was on the plaintiff to show when the corporation first received knowledge of the long-continued cutting of the timber by the defendant on the lands in dispute. Actions to annul judgments for fraud "must be brought within the year after the fraud has been discovered." Code Prac. art. 613. In such cases it has been held that the burden of proof is on the plaintiff in nullity to show when the knowledge of the fraud was acquired. Succession of Dauphin, 112 La. 139, 36 South. 287, and cases therein cited. This ruling is based on the familiar principle that the burden of proof is on the party who has to support his case by a fact he knows or which is peculiarly within his knowledge. 16 Cyc. 937.

In the case at bar the plaintiff relies on an exception to the general rule that actions for damages resulting from offenses (torts) are prescribed by one year from the day the damage was sustained. Merrick's Rev. Civ. Code, arts. 3536, 3537.

It has been held that a plaintiff who claims an exemption (such as nonresidence) from the general rules of prescription must prove the fact. Hubnall v. Watt, 11 La. Ann. 57. We think that this doctrine is applicable to the case at bar where the plaintiff claims the benefit of the exception provided by Act No. 33, p. 41, of 1902, in favor of a particular class of persons, to wit, owners of land ignorant of trespass committed on their property. On either ground the plea of prescription was properly sustained.

The claim of the defendant against the plaintiff for taxes paid on the land is without merit, as the amounts so paid were more than compensated by the value of the timber converted by the defendant to his own use.

The claim of the defendant against his warrantors for attorney's fees cannot be allowed. Walsh et al. v. Harang and Husband, 48 La. Ann. 992, 20 South. 202.

Judgment affirmed, costs of appeal to be paid by the appellant.