(46 South. 337.)

No. 16,915.

ANTRIM LUMBER CO., Limited, v. S. H. BOLINGER & CO., Limited.

(April 27, 1908.)

1. PRESCRIPTION—TENDER—EFFECT ON CLAIM—NOT INTERRUPTED BY TENDER FURTHER THAN AS TO AMOUNT TENDERED.

Tender of an amount in open court and the plea accompanying it did not have the effect of taking the whole of plaintiff's claim out of the bar of prescription.

Thereby only a part of the claim was acknowledged.

2. SAME—TRESPASS TO PROPERTY—EVIDENCE—KNOWLEDGE.

The date prescription begins to run, as relates to trespass on property (act No. 33, p. 41, of 1902), must be shown with reasonable certainty, if the testimony seeks to prove that it began to run from the day that the knowledge came to the owner, and not from the date that the act complained of was committed.

3. APPEAL—WEIGHT OF TESTIMONY.

The testimony was conflicting, and under the general rule upon the subject weight is given to the opinion of the district judge, who saw and heard the witnesses.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3983–3989.]

(Syllabus by the Court.)

Appeal from Second Judicial District Court, Parish of Bossier; Richard Cleveland Drew, Judge.

Action by the Antrim Lumber Company, Limited, against S. H. Bolinger and Company, Limited. Judgment for defendant, and plaintiff appeals. Affirmed.

Joannes Smith and Alexander & Wilkinson, for appellant. William Alexander Mabry and Thatcher & Welsh, for appellee.

BREAUX, C. J. Plaintiff instituted this suit against defendant for $11,553.04.

The plaintiff is the owner of pine lands containing 100 acres, and owns a sawmill, cuts down trees, and manufactures them into lumber and articles of wood.

The complaint is that defendant entered upon plaintiff's land as trespasser, cutting down 462,146 feet, log scale, manufactured the trees into lumber, and appropriated the output.

Plaintiff alleges that the trespass complained of became known to its officers only about two months before the date this suit was brought.

In making up the amount due, plaintiff claims that there is an increase of 25 per cent. in the lumber or board measurement, and in consequence that the number of feet claimed produced at least 577,682 feet, worth $20 per 1,000; the profit the plaintiff avers it would have made if the trees had not been taken by the defendant.

The defense is, in addition to the general issue and the prescription of one year, that plaintiff and defendant, respectively, had logging tramroads running from their mills; that near the tramway of plaintiff the defendant had 120 acres of pine land, while plaintiff, on the other hand, owned 80 acres of pine land near defendant's tram.

Defendant avers that an authorized officer proposed to plaintiff to make an exchange, in this: That plaintiff should cut timber on defendant's land near its tramway, and defendant would cut timber on land near plaintiff's tramway. That difference in the number of trees cut down would be settled on the basis of $2 per 1,000 (for all excess).

This, urged the defendant, was a fair market price.

That, owing to the conduct and utterances of plaintiff's officer or agent, defendant acted upon the proposal submitted by defendant to plaintiff; that they understood that all prov-

ed satisfactory to plaintiff; and that defendant was authorized to cut the timber.

The admission is, on the part of the defense, that about 330,000 to 340,000 feet were cut off by it on the land of plaintiff in the year 1904, up to August.

Defendant's further contention is that over two years had elapsed when plaintiff complainingly made claim for the timber.

The defendant tendered $680 in open court; that is, $2 per 1,000 for 340,000 feet.

The plea of prescription urged raises the most important issue. A summary of the facts relating to that plea is inserted.

The president of plaintiff company testified: That he became aware of the asserted trespass committed by cutting down trees on his company's land 10 months before this suit was brought.

It is in place here to state that the suit was instituted in May, 1906.

That about 10 months before the suit was brought he—the president of plaintiff's company, Chas. Antrim—received a letter from one of the subordinate officers of the company informing him of the facts.

This letter was produced, and is in evidence. Its date corresponds with the testimony.

Regarding any agreement in the nature of a license to defendant, as defendant alleges was entered into, and as the vice president of defendant company testified, plaintiff's president denied that there ever was such an agreement.

The vice president, W. H. Antrim, of the plaintiff company, also testified that he became aware of the cutting of the timber about the same time, and he corroborated the president of the plaintiff company that there had been no final negotiations regarding an exchange of trees, as contended by defendant's officers.

There are three brothers connected with the plaintiff company—one the president, the

other vice president, and still another, who is "superintendent of the railroad and logging" of the plaintiff company.

The latter is not a stockholder, but he runs the lines between the lands and looks after the cutting of the timber and after the teams. He has general charge of the woods of the company. He is its woodman. He also lays out the spur tracks to the body of the timber. He cuts and builds the tramway, and determines where to cut timber. All of these works are in his charge; but, as before stated, he is not a stockholder.

He as a witness at first stated that he knew that the timber in question had been cut in July, 1904, and that he reported the fact to the president the same day. He subsequently corrected the statement, and said that it was July 17, 1905.

He also swore that it surprised him very much when he heard that some time before there had been a cutting of trees by defendant on plaintiff's land.

It is in evidence that the respective camps of the sawmills out in the woods were not far apart, whether in hearing distance of the ax of the woodmen is not shown; but the men sometimes visited each other's camps.

The testimony of this witness is contradicted. Although he says he was surprised, and fixes the date of the cutting of the trees as before stated, à witness, who was a workman of the plaintiff company in July, 1904, when the trees were cut down, testified that this first witness, who testified as just stated, was at the camp nearly every day; that he heard him say that defendant had cut timber on the lands of plaintiff company.

This witness testified that he was certain that this statement was made before June, 1905.

It is proper to add that this witness was defendant's employé at the time that he testified.

This witness further adds that the said superintendent also said that defendant had left timber of its own in exchange for that which defendant had cut down on plaintiff's land, but that plaintiff would not cut it down.

Another witness, a workman of defendant company, testified that he heard the said superintendent, in March, 1905, say that defendant had cut timber belonging to plaintiff company. This heard conversation was, the witness stated, at a time previous to a fire, which seemed to fix the date with certainty as prior to June, 1905.

He further testified that the superintendent told a teamster, whose name is Holliday, in his presence, in the latter part of the spring of 1905, that defendant had cut timber on plaintiff's lands; that he heard Holliday report to him to that effect.

The superintendent of a department of the work, H. M. Antrim, testified that Holliday had never reported to him that timber had been cut.

It remains that Holliday was not called as a witness, nor his absence accounted for.

To briefly sum up the facts: The timber was cut down over a year and a half before suit was brought.

The onus of proof was with plaintiff regarding the date of the knowledge.

We take up in the first place for discussion and decision the effect which should be given to the tender made in open court by defendant in payment of the number of trees which it owned to have cut down. The answer must be taken as a whole. Admissions generally are not divided particularly, where the purpose is to acknowledge that an amount is due for the offense of trespass, which the defendant offers to settle. Compromises are favored; also the tender of amounts. It would be different if a broad and far-reaching effect were given to these attempts at compromise.

We feel quite confident that there was no such acknowledgment as revived a prescribed claim; that the admission did not take the claims out of prescription.

The amount acknowledged to be due cannot be expanded, so as to take in the whole claim out of prescription.

The tender admits the debt to the extent of the amount tendered, and no further.

The agreement alleged by defendant, while it has not the effect of an admission, in order that it may have any effect at all, must be proved by the defendant, which was not done. The weight of the testimony is entirely against it. There had been some talk and some correspondence in regard to the exchange of trees between plaintiff and defendant; that is, plaintiff to cut down certain trees of defendant, and defendant certain trees of plaintiff. But all of this never had been definitely agreed upon, and defendant had no right to cut down plaintiff's trees. It assumed the right. If it were not for prescription, it would certainly be liable.

Now, as to prescription, the important issue in the case:

It is scarcely necessary to state that plaintiff's action is prescribed by one year from the time the alleged trespass became known to plaintiff.

We insert here a list of authorities, to the end that they may serve as reference upon the subject-matter involved: Levert v. Sharpe, 52 La. Ann. 599, 27 South. 64; Burch v. Willis, 21 La. Ann. 492; Shields v. Whitlock and Brown, 110 La. 714, 34 South. 747; Gilmore v. Schenck, 115 La. 386, 39 South. 40; Millspaugh v. City, 20 La. Ann. 323; Wood v. Harispe, 26 La. Ann. 511; Edwards v. Ballard, 20 La. Ann. 169; Foley v. Bush, 13 La. Ann. 126; Whitehead v. Dugan, 25 La. Ann. 409.

The Legislature has introduced an amendment as relates to knowledge of injury to property growing out of trespass. Act No. 33, p. 41, of 1902.

The date knowledge comes to the owner prescription begins to run. Citizens' Bank v. Jeansonne, 120 La. 393, 45 South. 367.

The owner had attempted to fix the knowledge as having come to him within the 10 months before the suit was instituted. The onus of proof was with plaintiff. This the court decided in interpreting the foregoing statute in the case last cited supra.

It being settled that prescription runs from the date before mentioned, we take up the subject of conflict of testimony.

The president and the vice president of the plaintiff company have sworn that the knowledge was brought home to them only within the 10 months. But one of these officers is most of his time in St. Louis, Mo., and the other is, we infer from the testimony, also at times absent. At any rate, this last officer does not attend particularly to the timber lands. That was left to another brother, who is in charge of the woods, through whom information came to the president and vice president that the trees had been cut down.

In view of the importance of the position held by this officer, the knowledge which came to him of the trespass was notice to the plaintiff. Corporations can act only through agents. Where one acts for a department of its work, knowledge to him must have the effect of knowledge to the corporation. Notice to officers and agents should be sufficient. 21 Eng. & Am. Ency. of Law, pp. 836, 913.

In view of the contradictions before mentioned, in our view, plaintiff has failed to prove the date notice was brought home to it. Having thus failed, and it being evident that the trees were cut over 12 months before suit was brought, we cannot do otherwise than affirm the judgment.

For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed.