(114 So. 654)

No. 26230.

**DUCROS v. ST. BERNARD CYPRESS CO., Limited.**

Jan. 31, 1927.

*(Syllabus by Editorial Staff.)*

1. **Courts ☞224(10)**—Where amount over $2,-000 was in issue, Supreme Court had jurisdiction of appeal, although appellant, in brief, asked judgment for less (Const. 1921, art. 7, § 10).

On appeal in suit for wrongfully cutting plaintiff's timber, where plaintiff sued for over $2,000 and the defendant put the entire amount sued for at issue, Supreme Court *held* to have jurisdiction under Const. 1921, art. 7, § 10, notwithstanding appellant in his brief requested judgment for a less amount.

2. **Courts ☞224(10)**—Request in appellant's brief for amount less than amount in issue held not to have effect of amending pleadings (Const. 1921, art. 7, § 10).

Request in appellant's brief for an amount less than $2,000, which amount under Const. 1921, art. 7, § 10, must be in contest before the Supreme Court can take jurisdiction of an appeal, where a greater amount was at issue under the pleadings, *held* not to have effect of amending the pleadings and divesting Supreme Court of jurisdiction.

3. **Judgment ☞572(2)**—Judgment sustaining exception of no cause of action will support plea of res judicata in second suit between same parties, where plaintiff has made all possible allegations in first pleadings.

Judgment sustaining an exception of no cause of action will support a plea of res judicata in a second suit between the same parties for the same relief, where in the suit in which the exception is sustained plaintiff has alleged all facts which he may legitimately plead.

4. **Judgment ☞656**—Judgment sustaining exception of no cause of action held not res judicata in second suit wherein petition alleged new fact curing supposed defect in first pleading.

Judgment sustaining exception of no cause of action in suit for cutting plaintiff's timber, on ground that plaintiff had not shown possession *held* not res judicata in second suit, wherein petition sufficiently disclosed that plaintiff was in possession, and so cured the supposed defect in the first pleading.

5. **Trespass ☞20(1)**—Owner of timber land need not be in actual possession to recover damages for wrongful cutting.

Owner of timber, unlawfully cut from his land, need not allege or prove possession in order to recover the value of the timber.

6. **Limitation of actions ☞20**—Prescription; suit to recover specific lumber removed from plaintiff's land is governed by ten-year prescription statute (Civ. Code, art. 3509).

Suit to recover specific lumber wrongfully cut and removed from plaintiff's land is not barred for ten years under Civ. Code, art. 3509, providing that the possessor of any movable who has possessed it for ten years without interruption shall acquire ownership without being obliged to produce a title or prove he did not act in bad faith.

**7. Limitation of actions** ⊕⟶32(1)—**Prescription; suit for cutting plaintiff's lumber, asking judgment for lumber but not for specific lumber cut held equivalent to suit for money alone and governed by one-year prescription statute (Civ. Code, art. 3536).**

Suit for damages for cutting plaintiff's timber asking judgment for a certain amount of lumber or the net value thereof, but not asking for the specific lumber alleged to have been wrongfully cut, *held* equivalent to a suit for money alone, and governed by Civ. Code, art. 3536, providing that actions resulting from offenses or quasi offenses are prescribed in one year.

**8. Limitation of actions** ⊕⟶195(3)—**Prescription; where year intervenes between time timber is wrongfully cut and time of suit, burden is on plaintiff to prove when he obtained knowledge (Civ. Code, art. 3536; art. 3537, as amended by Act No. 33 of 1902).**

Where a year has intervened between wrongful cutting and removal of timber and the service of citation in suit to recover therefor, the burden is on plaintiff to prove when he obtained knowledge of the damage and to avoid Civ. Code, art. 3536, and article 3537, as amended by Act No. 33 of 1902, providing that actions for offenses and quasi offenses are prescribed by one year, and in case of wrongful cutting of timber the prescription runs from the date the owner obtains knowledge of the damage.

**9. Limitation of actions** ⊕⟶130(5)—**Prescription; first suit for cutting plaintiff's timber, if timely instituted, will interrupt prescription as to second, instituted within year after first was dismissed (Civ. Code, art. 3536).**

Where first suit for wrongfully cutting and removing plaintiff's timber was not barred by Civ. Code, art. 3536, it will have the effect of interrupting prescription as to a second suit instituted within a year from the dismissal of the first.

**10. Limitation of actions** ⊕⟶197(2)—**Prescription; evidence held insufficient to prove plaintiff brought suit for cutting timber within year after receiving knowledge (Civ. Code, art. 3536; art. 3537, as amended by Act No. 33 of 1902).**

In suit for wrongfully cutting and removing plaintiff's timber, evidence *held* insufficient to sustain plaintiff's burden of proving that he brought suit within year after receiving knowledge of the damage, as was necessary under Civ. Code, art. 3536, and article 3537, as amended by Act No. 33 of 1902.

**11. Limitation of actions** ⊕⟶165—**Prescription; in suit for cutting plaintiff's timber, wherein plea of prescription was sustained, damages for cost of survey to determine boundaries and estimate loss held to fall with main demand (Civ. Code, art. 3536).**

In suit to recover damages for wrongfully cutting and removing plaintiff's timber, wherein defendant's plea of prescription under Civ. Code, art. 3536, was sustained, the cost of plaintiff's survey to ascertain the exact lines of his property to enable him to prosecute a suit, and including an estimate of the timber cut, *held* to fall with the main demand; being merely incident to it.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Suit by Louis A. Ducros against the St. Bernard Cypress Company, Limited. From a judgment sustaining defendant's pleas of res judicata and prescription of one year and also deciding the merits in favor of defendant, plaintiff appeals. Judgment annulled and set aside, plea of res judicata overruled, plea of prescription of one year sustained, and plaintiff's demands dismissed.

Oliver S. Livaudais, James Wilkinson, and Wallace A. Nunez, all of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellee.

OVERTON, J. This suit was instituted to recover from defendant 375,000 feet of cypress lumber, less the cost of manufacture, or, in lieu thereof, the net value of the lumber sued for, which is alleged to be $4,125, and, in addition thereto, $1,000 for hardwood timber, felled and destroyed by defendant on land claimed by plaintiff, and also to recover from defendant $155, the costs of making a survey to ascertain the extent of damage which plaintiff claims defendant caused him to suffer. Plaintiff's contention is that defendant entered upon his land, cut and removed therefrom, in bad faith, cypress timber belonging to him, manufactured it into lumber, and destroyed other timber belong-

ing to him, for all of which he contends plaintiff is indebted to him in the aforesaid number of feet of cypress timber, or the value thereof, and the amount stated for timber destroyed, as well as the costs of said survey, made to ascertain the loss suffered.

[1, 2] About the time of the submission of this appeal, defendant and appellee filed a motion to dismiss it on the ground that, as disclosed by the record as well as by plaintiff's brief, the amount in contest does not exceed $2,000, and hence is not sufficient to vest us with jurisdiction. Ordinarily, which is the case here, our jurisdiction does not attach unless the amount in contest exceeds $2,000, exclusive of interest. Constitution 1921, § 10, art. 7. Here, however, plaintiff has sued for an amount greatly in excess of that, and defendant has put the entire amount sued for at issue. Therefore, on the face of the pleadings, this court has jurisdiction. The only justification there could be for dismissing the appeal would be because plaintiff's demand was manifestly inflated for the purpose of vesting us with jurisdiction. The record does not disclose that his demand was so inflated. The only basis for a contention that it was so inflated is that plaintiff, in discussing the quantum of damages, expresses the view that largely upon defendant's own showing he is entitled to judgment for $1,951.63 wth legal interest thereon (an amount below our jurisdiction), and closes his brief with a request that judgment be rendered in his favor for that amount. This expression of view, with the accompanying request, made after our jurisdiction had attached by the granting of the appeal and the furnishing of the appeal bond, does not divest us of jurisdiction. Being found merely in the brief, the statement and request have not the effect even of amending the pleadings. Jackson v. Michie, 33 La. Ann. 723; Timberlake v. Sorrell, 125 La. 554, 51 So. 586; City of Baltimore v. Lutcher, 135 La. 873, 66 So. 253.

The entire demand is still legally before us, though it is not pressed to its full extent. Our conclusion is that the motion should be overruled.

Having disposed of the question of jurisdiction, we shall now consider the various questions, so far as necessary, brought here by the appeal. The first question to be considered is one of res adjudicata. It appears that a suit instituted by plaintiff against defendant for damages for the taking of the same cypress timber and the destruction of the same hardwood timber was before this court in 1918. On the first hearing had, it was held that plaintiff's demands had prescribed, and judgment was rendered dismissing his suit. However, a rehearing was granted. On the rehearing, the plea of prescription, sustained on the original hearing was not considered, but instead the court considered an exception of vagueness and one of no cause of action, sustained both, and dismissed plaintiff's suit. Ducros v. St. Bernard Cypress Co., 145 La. 691, 82 So. 841. It is upon the judgment sustaining the exception of no cause of action that the plea of res adjudicata is based.

[3, 4] A judgment sustaining an exception of no cause of action will support a plea of res adjudicata in a second suit between the same parties for the same relief, when, for instance, it appears that in the suit in which the exception is sustained the plaintiff has alleged all the facts which he may legitimately plead, and when, notwithstanding this, the facts alleged will not, upon proof thereof, entitle him to judgment. Baker v. Frellsen, 32 La. Ann. 822; Sewell v. Scott, 35 La. Ann. 553; Laenger v. Laenger, 138 La. 532, 70 So. 501. On the other hand; if the exception of no cause of action is sustained because the plaintiff has failed to allege some fact necessary to obtain the relief for which he asks, and in a second suit he cures that defect by alleging such fact, then the judgment sus-

taining the exception of no cause of action will not support a plea of res adjudicata in the second suit. Laenger v. Laenger, supra; Sander v. New Orleans & N. E. R. Co., 139 La. 85, 71 So. 238; Woodruff v. Producers' Oil Co., 142 La. 368, 76 So. 803.

In the Ducros Case, 145 La. 691, 82 So. 841, relied upon by defendant to sustain its plea of res adjudicata, in passing on the exception of no cause of action, there filed, it was said, though plaintiff had alleged he was the owner of the land on which the timber was cut, that still he had not alleged that he was in possession of the land at the time of the taking or destruction of the timber, or that he had since acquired possession. It was also said that, without an allegation showing that he was in possession at that time, or that he had since acquired possession, the petition disclosed no cause of action. A decree was handed down sustaining the exception of no cause of action, and also one of vagueness, and dismissing the suit. The opinion was signed by two members of the court, a third member, without assigning his reasons therefor, concurring only in the decree, a fourth member, as appears from his opinion in 82 So. 844, dissenting from the views expressed by the first two members, but concurring in the dismissal of the suit on the ground that the action had prescribed, and the remaining member dissenting from the decree handed down.

[5] From the foregoing, it by no means appears that a majority of the court approved of the ground upon which the exception of no cause of action was sustained, and the suit dismissed. In fact, in Interstate Trust & Banking Co. v. Picard & Geismar, 147 La. 430, 85 So. 65, it was said that a majority of the court did not approve of the dismissal of the suit upon that ground. But both sides to this litigation assume that the exception of no cause of action was sustained, for the reason assigned in the former Ducros Case,

and, for the moment, we shall so assume. So assuming, it would appear that the exception was sustained, because of the failure to make what was deemed a necessary allegation; that is, an allegation showing that plaintiff was either in possession at the time the timber was cut or had since acquired possession. In our view, the present petition sufficiently discloses that plaintiff was in possession at the time the timber was cut. Therefore plaintiff's petition, even under the ruling assumed to have been made in the former case, shows a cause of action, and the plea of res adjudicata is not well founded. We are not, however, to be understood as holding that, under the present jurisprudence, one claiming to be the owner of timber, unlawfully cut from his land, must make an allegation showing possession in order to recover the value of the timber, for such is not the jurisprudence. Harang v. Bowie Lumber Co., 145 La. 96, 81 So. 769; Interstate Trust & Banking Co. v. Picard & Geismar, 147 La. 430, 85 So. 65. We have merely, acting upon the foregoing assumption, treated the ruling assumed to have been made in the former Ducros Case as the law of the case, and have disposed of this plea accordingly.

[6, 7] Defendant also urges the prescription of one year against plaintiff's demands. Before considering the plea tendering this prescription, it is necessary to inquire again into the nature of plaintiff's demands. If plaintiff had sued for the specific lumber, manufactured from the timber removed from the land claimed by him, we would hold that the prescription of one year had no application whatever, so far as relates to the demand to recover that lumber, for then plaintiff would be suing to recover his own property, alleged to have been tortiously taken, and the action would be governed by the prescription of ten years. Civil Code, art. 3509. However, plaintiff has not sued for that particular lumber, nor has he attempted

to identify it in the pleadings or by proof, assuming that he was in position to do so. The prayer of his petition is that he "recover judgment against said defendant, condemning it to deliver to defendant 375,000 feet of cypress merchantable lumber, less the cost of its cutting, transportation, and manufacture from the stump into lumber, or to pay petitioner the net value of said lumber." By so suing, plaintiff makes that amount of merchantable cypress lumber, less the cost mentioned, the measure of his damage, and shows his willingness to accept it instead of the value thereof in money. There is no substantial difference between suing for lumber, as compensation for damages suffered and for money in settlement of such damages, and we shall so treat the case in passing upon the plea of prescription, or, in other words, we shall consider the case on the same basis as if the suit had been brought for the value of the lumber in money alone.

Article 3536 of the Civil Code provides that actions for damages, resulting from offenses and quasi offenses are prescribed by one year. It is held that an action for the value of timber tortiously cut and removed from land is governed by this prescription. Shields v. Whitlock & Brown, 110 La. 714, 717, 34 So. 747; Antrim Lumber Co. v. S. H. Bolinger & Co., 121 La. 306, 46 So. 337; Poirier v. Burton-Swartz Cypress Co., 127 La. 936, 54 So. 292; Schwing Lumber & Shingle Co. v. Peterman, 140 La. 71, 72 So. 812.

[8] The prescription provided by article 3536 of the Code runs, where timber has been injured, damaged, cut, or destroyed from the date knowledge of the damage has been received by the owner of the property. Civil Code, art. 3537, as amended by Act 33 of 1902. Under this article, as interpreted, the burden is on the one against whom the prescription is pleaded to show when he obtained knowledge of the trespass, whenever a year has intervened between the infliction of the damage and the service of citation in the suit to recover therefor. Citizens' Bank v. Jeansonne, 120 La. 393, 45 So. 367; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234.

[9] The record discloses that defendant deadened the cypress timber on the land claimed by plaintiff in the spring of 1912, began cutting and removing it about the middle of December, 1912, and completed the work some time in February, 1913. The first suit was filed on April 22, 1914, and service of citation was made therein on April 29, 1914, or more than a year after the alleged trespass had been committed. That suit was dismissed by this court on November 4, 1918, and the present one was instituted on February 27, 1919, within a year after the dismissal of the first one. If the first was timely instituted, it had the effect of interrupting prescription as to the second, and, since the second was instituted within a year from the dismissal of the first, the second was timely instituted, if prescription had not run when the first was filed. Whether the first suit was timely instituted is dependent on whether it was filed, and citation served, within a year after plaintiff received knowledge of the alleged trespass.

[10] On the trial of the first case, defendant testified that the first knowledge he had that his timber had been cut was about the latter part of the preceding winter, referring to the winter of 1913 and 1914. His evidence on this point, at that trial, was as follows:

"Did you know at the time this timber was cut that they were taking timber from your place? A. No. Q. When did you find that out? A. I found that out after I went back there. Q. About when was that? A. About the latter part of last winter (referring to the winter of 1913 and 1914). I did not think they had taken it away. That is why I never went back there."

On the trial of the present case, in November, 1921, plaintiff testified on the question as

to when he first received knowledge of the cutting of the timber as follows:

"Now, you swore in your previous testimony that you knew that they were cutting these trees in the winter of 1913 and 1914? A. Yes. Q. Do you remember what part of the winter that was? A. When they were cutting in the rear in the other place? Q. Yes. When was the first time you knew that they had cut any trees out there? A. On my place? Q. Yes. A. In 1913. Q. What time in 1913? .A. December—around there. Q. How long after you discovered this cutting of your trees by the defendant did you employ Mr. Livaudis and get him to write a letter to the defendant? A. Immediately."

After the evidence quoted in the preceding paragraph was given, the case was continued for the introduction of further evidence. The trial was resumed some seven months later, and plaintiff was recalled for cross-examination. He then testified as follows:

"Q. You have never been on that property, the rear end of that property, in your life, have you? A. Oh yes; many times. Q. In the back? A. Yes; up to the 40-arpent line. Q. When did you go out there last before you filed suit in St. Bernard parish (meaning the first suit)? A. Well, I could not tell you when I went out there; it was when I heard the timber was cut. Q. And how long was that before you filed the suit? A. I could not tell you exactly, but I went back there often, hunting, and I used to walk back there, but exactly the time I could not say. Q. You could not tell me when you went back there? A. Previous to the cutting of the lumber? Q. Previous to the filing of the suit in St. Bernard parish? A. I went out there after they had cut the timber, and I was notified and went to see. Q. You went out there about the time they cut the timber there? A. Well, a little afterwards, after I was notified, and I went to see about the timber they had cut. Q. Won't you tell me when that was? A. I could not tell you exactly, but it is written there; I do not know; I cannot keep all those things in my head. Q. But what I want you to tell me is when you went back there, if you can? A. I could not exactly say; it is a good while ago. Q. How long after you were told the timber had been cut, as you say, was it before you went back there? A. I went back after I was told the timber was cut. Q. But how long after? A. A week or so, two or three days, immediately I went to see. Q. How long after the operations had stopped, was it before you went back there? A. The operations stopped where, on my grounds? Q. Up at the end of the cutting? A. It kept on further down. Q. Where were they when you went back there? A. I don't know. Q. They were cutting on Creedmore at that time? A. I could not tell you exactly, I only noticed them cutting on my ground—cutting the timber (evidently meaning that they had cut the timber). Q. Doctor, as a matter of fact, now, do you know exactly when it was that you went back there to see, and when you went back there to see? A. I could not tell you exactly, right now, no, sir; I really could not tell you."

In our view, the foregoing evidence shows that plaintiff is by no means even reasonably certain as to when he acquired knowledge that the timber had been cut. On the trial of the first case, he said that his first knowledge was received about the latter part of the winter of 1913 and 1914, but that was evidently incorrect, because it appears elsewhere in the record that his attorney made demand by letter on defendant for a settlement on December 19, 1913. On the trial of the second case he said that he first received knowledge of the trespass about December, 1913, but a few months later, during the course of the same trial, he stated he was unable to say exactly when he first received knowledge of the cutting, though he was given sufficient opportunity to state even approximately when such knowledge was received. The nearest approach to certainty is that he says that, immediately after gaining knowledge of the trespass, he employed counsel to make demand on defendant for a settlement. There is a letter in the record, written by counsel in plaintiff's behalf and in behalf of a number of other property owners, dated December 19, 1913, making demand on defendant for settlement, but it does not appear how long after the employment the letter was written. In connection with this uncertainty it should be observed that the property from which the timber was cut was only a few hundred yards from the courthouse

and only about three or four hundred-feet farther from plaintiff's residence, which is located about a block below the courthouse. Plaintiff acknowledges that he knew defendant was cutting timber in the vicinity of the land claimed by him. In fact the cutting and removal of the timber in that locality was a matter of general knowledge in the neighborhood. The people there were generally interested in its removal, because it was the first attempt on the part of a lumber company to penetrate the swamps in that vicinity. Defendant had constructed a railroad to remove the timber, and plaintiff heard the whistle of the locomotive, as operations were being conducted, though he says he did not know defendant was cutting on the land claimed by him. While perhaps plaintiff could not have detected from his house or from the public road passing it that defendant was cutting on his land, though there is evidence in the record tending to show that he could, still plaintiff was in the vicinity of the land, and hence in position to learn quickly of any trespass on it. The situation suggests that he may well have learned of the trespass very soon after it occurred. With these facts before us, we feel that we would not be justified in holding that plaintiff has carried the burden of proof resting upon him, by showing with legal certainty that his first suit was filed within one year after he received knowledge of the trespass. Since the burden of proof rested upon plaintiff to show that fact, and since he has not done so with legal certainty, we feel that the plea of prescription should be sustained.

[11] As relates to the demand for the cost of the survey, that demand is a mere incident of the main demand. The survey was made by plaintiff to ascertain the exact lines of the property, claimed by him, to enable him to prosecute his suit, and includes an estimate of the timber cut. Since the cost of this survey and estimate is a mere incident of the main demand, it falls with it.

The trial judge at first overruled the plea of res adjudicata, but, after the case was tried on the merits, sustained it, and also sustained the prescription of one year, and on the merits held that plaintiff was not the owner of the timber cut and destroyed, but that it belonged to the state at the time it was cut. We find it unnecessary to go so far as the trial court went and determine whether plaintiff, defendant, or the state owned the timber at the time it was cut or destroyed, for, no matter what the conclusion may be in that respect, the result must be the same.

For the purpose of convenience, rather than attempt to amend the judgment of the trial court, we shall set it aside, and render judgment anew.

For the reasons assigned, the judgment appealed from is annulled and set aside, the plea of res adjudicata is overruled, the plea of prescription of one year is sustained, and plaintiff's demands are dismissed, at his cost in both courts.

O'NIELL, C. J., concurs in the decree.