(111 So. 673)

No. 28190.

ERWIN v. LEE LUMBER CO., Limited.

(Jan. 31, 1927. Rehearing Denied Feb. 28, 1927.)

*(Syllabus by Editorial Staff.)*

1. Limitation of actions ⟨⟩195(3)—Prescription; plaintiff, suing for timber cut and removed, had burden of showing exception to general prescription of one year (Civ. Code, art. 3536, and art. 3537, as amended by Act. No. 33 of 1902).

Where plaintiff, in suit for trespass on lands and for value of timber cut and removed from same, relies on exception, under Civ. Code, art. 3537, as amended by Act No. 33 of 1902, to general rule of prescription, under Civ. Code, art. 3536, in that prescription for damage to timber property runs from date of knowledge thereof, burden of proving that he comes within exception is on plaintiff.

2. Limitation of actions ⟨⟩197(2)—Prescription; evidence held to show such knowledge of plaintiff of denuded condition of timber lands as to bar action for trespass more than year after he should have known facts (Civ. Code, art. 3536, and art. 3537, as amended by Act No. 33 of 1902).

Evidence, in suit for value of timber cut and removed, *held* to show that plaintiff at least had such knowledge as required reasonable diligence on his part to ascertain whether land had been denuded of timber, sufficient to start limitations, under Civ. Code, art. 3537, as amended by Act No. 33 of 1902, providing that prescription of one year, under Civ. Code, art. 3536, shall not begin to run for damage to timber or property until date of knowledge thereof.

3. Action ⟨⟩63—Relief will be denied where suitor, before proceedings, permits lapse of time, so that evidence becomes obscure or lost.

Where a suitor, before a proceeding, permits such a lapse of time that evidence has become obscure or lost, relief will be denied because of difficulty of doing justice.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Suit by Mason P. Erwin against Lee Lumber Company, Limited. Judgment for plaintiff for an amount less than sued for, and plaintiff appeals, and defendant answers the appeal, praying that judgment be amended and suit dismissed. Judgment avoided, and suit dismissed.

White, Holloman & White, of Alexandria, for appellant.

Overton & Hunter, of Alexandria, for appellee.

BRUNOT, J. This suit grows out of a trespass upon lands owned by the plaintiff, and it is for the value of timber cut and removed therefrom by defendant during the year 1910. The lands are described as the—

"east half (E. ½) of northwest quarter (N. W. ¼) section seventeen (17), township six (6) north, range two (2) east, Grant parish, La."

The petition alleges that the defendant, its officers, agents, and employees, entered upon plaintiff's lands wrongfully, and, in legal and moral bad faith, built a tramroad diagonally across it, and cut and removed therefrom 600,000 feet of pine timber; that the net value of the lumber manufactured from said timber was $22 per M feet at the date this suit was filed; the net value of said lumber in 1910, when the timber was cut, was $14 per M feet; and that the stumpage value thereof at the date this suit was filed and in 1910 was $15 per M feet and $14 per M feet, respectively. The prayer of the petition is for a judgment for $13,200, the present net value of the lumber manufactured from said timber, less the cost of manufacture, or, in the alternative, for a judgment for $9,000, the value of said lumber in 1910, less the cost of manufacture, or, in the alternative, for a judgment for $9,000, the present stumpage value of said timber, or, in the final alternative, for a judgment for $6,000, the stumpage value of the timber in 1910, and for legal interest on such judgment as might be rendered from December 31, 1910, until paid, and for a further judgment for $1,825 for deterioration

and damage to the value of the remaining timber on the land described in the petition, and for reasonable attorney's fees, with legal interest on said sums from judicial demand until paid.

To this petition the defendant pleaded the prescription of one year. This plea was regularly tried, argued, submitted, and overruled. An answer was filed in which all facts alleged in the petition as causes of action are denied, and in which defendant pleads the prescription of 1, 2, 3, 4, 5, and 10 years. The case was tried and judgment was rendered in favor of the plaintiff and against defendant for $400 with legal interest thereon from the date of the judgment and for the costs of the suit. From this judgment the plaintiff appealed. The defendant has answered the appeal, reiterates its pleas of prescription, and prays that these pleas be sustained, that the judgment be thus amended, and that plaintiff's suit be dismissed at its cost, or, in the alternative, that the judgment appealed from be affirmed at plaintiff's cost.

Suits for damages resulting from offenses or quasi offenses are prescribed in one year (C. C. art. 3536), and this prescription runs—

"where land, timber or property has been injured, cut, damaged or destroyed from the date knowledge of such damage is received by the owner thereof." C. C. art. 3537, as amended by Act No. 33 of 1902.

[1] Plaintiff contends that the burden of proof is upon the defendant to show that plaintiff had knowledge of the cutting of his timber more than a year prior to the institution of his suit, but he cites no authority which supports this contention. In the case of Citizens' Bank v. Jeansonne, 120 La. 393, 45 So. 367, Justice A. D. Land, the organ of this court, said:

"Prior to the adoption of Act No. 33, p. 41, of 1902, actions for damages for trespass upon lands by cutting and removing timber were prescribed by one year from the date of the trespass. Shields v. Whitlock & Brown, 110 La. 714, 34 So. 747; Gilmore v. Schenk, 115 La.

386, 39 So. 40. By the Act No. 33, p. 41, of 1902, it was provided that the prescription of one year runs 'where land, timber or property has been injured, cut, damaged or destroyed, from the date knowledge of such damage is received by the owner thereof.' * * * In the case at bar the plaintiff relies on an exception to the general rule that actions for damages resulting from offenses (torts) are prescribed by one year from the day the damage was sustained. Merrick's Rev. Civ. Code, arts. 3536, 3537. It has been held that a plaintiff who claims an exemption (such as nonresidence) from the general rules of prescription must prove the fact. Hubnall v. Watt, 11 La. Ann. 57. We think that this doctrine is applicable to the case at bar where the plaintiff claims the benefit of the exception provided by Act No. 33, p. 41, of 1902, in favor of a particular class of persons, to wit, owners of land ignorant of trespass committed on their property."

The ruling in Citizens' Bank v. Jeansonne is correct, and we adhere to it.

The proof offered on the plea of prescription may be summarized as follows:

[2] Plaintiff, on his direct examination, testified that he had no knowledge of the trespass and depredation on his land until March, 1925. When he obtained this knowledge, he opened negotiations with defendant and attempted to effect an amicable settlement of the matter, but, failing to do so, he filed suit in September, 1925; that he owns a number of tracts of wild or unoccupied and unimproved lands in this state; that for a number of years he had great difficulty in getting these lands properly described on the assessment rolls; and, like most taxpayers, he was anxious and interested in having his properties assessed, for the purposes of taxation, as low as possible. The plaintiff denies, however, that he made any formal affidavit or any rendition of his assessment except for 1921, when it was assessed as timber land. We quote his exact language as it appears in the record, vol. 2, p. 58:

"The only rendition that I ever made was for the year 1921, to the best of my knowledge and belief, and I disremember whether I made affidavit on the reverse of the rendition or not."

The plaintiff says he was on the land in 1901 or 1902, when he located it, but he had not seen it between that time and April 4, 1925, and the first knowledge he had that the timber had been cut was obtained on March 26, 1925, on which day Mr. L. H. Mizell, a timber estimator, informed him that not much timber remained on the land, but that he found a lot of stumps thereon. Plaintiff did not have his timber estimated, but he listed his property for sale, and he was informed that Mr. Mizell made the estimate for the Long-Bell Lumber Company, a prospective purchaser.

On the other hand, defendant offered the assessment of plaintiff's property for each of the years from 1902 to 1924 both inclusive. The assessments show that for three or four years prior to 1910 plaintiff's land was assessed as timbered land, but for more than ten years thereafter it was assessed as denuded land. Defendant also offered the testimony of Mr. Trent James, Mr. J. J. O'Quinn, and Mr. J. J. O'Quinn, Jr.; and Mr. James, the assessor of Rapides parish, testified that from 1910 to 1923, with the exception of 1921, the plaintiff's land in Grant parish (the land involved in this suit) was assessed as denuded land, and for several years prior to 1910 it was assessed as containing scattered timber. The redirect examination of this witness, which appears in vol. 2, pp. 10 and 11 of the record, is as follows:

"Q. Mr. James, from the year 1910 up to and inclusive of the year 1923, please state whether or not all these lands shown on the Erwin assessment were assessed as denuded lands?
"A. They were, except the year 1921.
"Q. Well, in 1921 it was assessed as what?
"A. As class C, hardwood, except 40 acres.
"Q. With that exception, they were all assessed as denuded lands?
"A. Yes, sir.
"Q. Prior to 1910 they were assessed for a number of years as containing timber?
"A. Scattered timber; yes, sir."

Mr. J. J. O'Quinn, the ex-assessor of Grant parish, testified that he had considerable correspondence, while he was assessor, with the plaintiff with respect to his assessments. Mr. J. J. O'Quinn, Jr., testified that he succeeded his father as assessor of Grant parish; that in nearly all of the letters plaintiff wrote to the assessor, according to his recollection of their contents, plaintiff stated that the timber on his land had been cut long ago, that there was no timber on it, and that it should be assessed at the lowest value given to pine lands. He also testified that plaintiff submitted a rendition sworn to by him before a notary public in 1922 or 1923, classifying his lands as denuded land, and that it was on plaintiff's representation that they were so assessed. Volume 2, pp. 22 and 23. The witness also testified that all of the correspondence and renditions referred to in his testimony were destroyed by him in 1924, when Mr. Willet, his successor, took charge of the assessor's office, and that plaintiff in response to a subpœna duces tecum to produce that correspondence had not produced all of the letters he had written, nor the renditions and affidavits he had made to the assessor with respect to his assessment. It also appears from the cross-examination of the plaintiff that his testimony, given on direct examination, must be carefully weighed. He testified, in chief, that he had never made a rendition to the assessor except for the year 1921. When confronted with certain letters he had written, he admitted that he made renditions for 1921 and 1922, and when confronted with his letter of March 5, 1923, wherein he states:

"You may also verify these descriptions by referring to my rendition for 1922, and any other renditions of mine which happen to be on file as to that matter, for I always have made same complete and correct [volume 1, p. 18],"

—he admits that he made renditions a few times, but denies that it was his uniform habit to do so.

This contradiction of testimony, the long lapse of time between the cutting of the timber and the institution of this suit, plaintiff's

admission that he made renditions of his property for assessment purposes, and the testimony of Mr. J. J. O'Quinn, Jr., that plaintiff wrote his office that the timber on his land had been cut, and he classified his land as denuded land and swore to the correctness of that classification before an officer authorized to administer oaths, is strongly persuasive of the fact that plaintiff knew his land had been denuded of timber several years before this suit was instituted. He may have been ignorant of the extent of the depredation or of the identity of trespasser, but he had such knowledge as to require prompt and reasonable diligence on his part to ascertain those facts.

In the case of Foster v. Mansfield, Coldwater & Lake Michigan Railroad, 146 U. S. 88, 99, 13 S. Ct. 28, 36 L. Ed. 899, the Supreme Court of the United States held that:

. "The defense of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove; and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts."

From the record it appears that during the years which elapsed between the cutting of plaintiff's timber and the institution of this suit, three fires have occurred in defendant's plant in which its books were destroyed; and that J. A. O'Shee, its land man, and E. Lee, its woods foreman, who were familiar with all of the facts in connection with the timber cut and manufactured into lumber by defendant during the year 1910 and for several years prior and subsequent thereto, are dead.

. [3] On the subject of laches and stale demands, we quote the following:

. "Where a suitor, before proceeding, permits such a lapse of time that the evidence has become obscured or lost, relief will be denied because of the difficulty of doing justice. * * * A specific application of the general rule just stated is in the refusal of the courts to afford relief to one who has lain idly by until the important witnesses to the transaction involved have died. * * * Sometimes the rule is stated with less positiveness that equity looks with disfavor on such suits, or that such a demand must be established with more than reasonable certainty." 16 Cyc. pp. 163, 164.

For these reasons, defendant's plea of prescription of one year should be sustained. It is therefore so ordered, and it is further ordered that the judgment appealed from be and it is hereby avoided, and plaintiff's suit is dismissed at his cost.

OVERTON, J., recused.